Jose F. RODRIGUEZ, et al., Plaintiffs,

v.

PRUDENTIAL–BACHE SECURITIES, INC., Defendant.

PRUDENTIAL–BACHE SECURITIES, INC., Plaintiff,

v.

Robert D. TANNER, Garland Hedges, Wolfram Pietri and Jose Cimadevilla, Defendants.

Civil Nos. 94–1299 (SEC), 90–2659 (SEC).

United States District Court, D. Puerto Rico.

April 5, 1995.

---

Jose A. Rey–Diaz, Santurce, PR, Jose L. Gonzalez–Castaner, Gonzalez Castaner, Ortiz Velez & Morales Cordero, San Juan, PR, for plaintiffs Jose F. Rodriguez, Ana M. Morales,

Conjugal Partnership Composed by Jose F. Rodriguez and Ana M. Morales.

Guillermo J. Bobonis, San Juan, PR, for defendant Prudential–Bache Securities, Inc.

## OPINION AND ORDER

CASELLAS, District Judge.

These consolidated cases had their genesis in Prudential–Bache Securities, Inc.'s ("Prudential") decision to withdraw from the Puerto Rico market, and the resultant termination from employment of several top executives assigned to the Puerto Rico office. The first action (Civil No. 90–2659) was filed on December 28, 1990 by plaintiff José F. Rodríguez, former President of Prudential–Bache Capital Funding Puerto Rico, Inc., together with his wife and their conjugal partnership, against defendant Prudential, seeking compensation for his allegedly wrongful discharge in violation of a contractual agreement which provided in part that plaintiff could not be terminated except for just cause. Upon defendant's motion to compel arbitration, the Court on April 16, 1991 stayed all discovery and ordered the parties to proceed with the arbitration of all claims pertaining to José F. Rodríguez. The claims of plaintiff's wife, Ana M. Morales, and the conjugal partnership were also stayed pending the outcome of arbitration. Meanwhile, another group of executives—to wit, Robert Tanner, Garland Hedges, Wolfram Pietri and José Cimadevilla—opted to bring forth their own claims directly through arbitration.

An arbitration panel was appointed by the New York Stock Exchange to entertain the parties' claims. Numerous sessions were held between February 18, 1992 and December 8, 1993. The panel issued its arbitration award on January 7, 1994, pursuant to which Prudential was ordered to pay the amount of $1,028,000 to Robert Tanner, $1,014,250 to José F. Rodríguez, $312,750 to Garland Hedges, $310,750 to Wolfram Pietri and $216,025 to José Cimadevilla, in addition to various amounts in costs and attorney's fees. Mr. José F. Rodríguez promptly moved the Court for entry of judgment on the arbitration award (**docket # 28**). Instead of making payment in satisfaction of the award, however, Prudential filed a petition to vacate the arbitration award as against all claimants (**docket # 31**) on the grounds that (a) the award is against public policy; (b) the award is in conflict with Puerto Rico's Law 80, the exclusive remedy for employees discharged without just cause; (c) the arbitrators improperly denied Prudential the opportunity to conduct discovery into the claimants' financial position and current earnings; (d) the award of attorneys' fees was contrary to law; (e) the award fails to properly record the decision of the Arbitrators that Prudential was not responsible for promissory notes issued by Tanner and Rodríguez to their employees at Prudential in lieu of cash bonuses; and (f) the award incorrectly notes that the Arbitrators ordered that appropriate shares of the bonus was to be paid to claimants. After the two cases were consolidated per the Court's order of October 17, 1994, the parties had ample opportunity to advance their respective arguments, including during an oral presentation to the Court as part of a General Calendar Call held on February 17, 1995, and now the consensus is that the matter is ripe for disposition.

As a preliminary matter, we address the issue of the timeliness of Prudential's petition to vacate the award, which was first raised by several of the claimants on a motion to dismiss filed on March 17, 1994 in Civil No. 94–1299, before the case was consolidated with Civil No. 90–2659. In essence, their argument is that Prudential's petition to vacate the award, filed on March 9, 1994, sixty-one (61) days after the award was issued, is untimely, as it was filed after the thirty (30) day period allegedly prescribed by Rule 627(g) of the Rules of the New York Stock Exchange for the filing of motions to vacate.[1]

---

1. The Employment Agreement signed by each claimant with Prudential–Bache Securities, Inc. contains an arbitration clause expressly requiring, *inter alia*, that all claims arising between Prudential and its employee be settled by arbitration under the prevailing Constitution and Rules of the New York Stock Exchange, Inc. Similarly, the Submission Agreement filed with the New York Stock Exchange clearly shows that the parties submitted the present controversy to arbitration in accordance with the Constitution, By-

Rule 627(g) of the New York Stock Exchange provides in its entirety:

All monetary awards shall be paid within thirty (30) days of receipt unless a motion to vacate has been filed with a court of competent jurisdiction. An award shall bear interest from the date of the award: (i) if not paid within thirty (30) days of receipt, (ii) if the award is the subject of a motion to vacate which is denied, or (iii) as specified by the arbitrator(s) in the award. Interest shall be assessed at the legal rate, if any, then prevailing in the state where the award was rendered, or at a rate set by the arbitrator(s).

In its opposition, Prudential asserts that the applicable limitations period for filing a motion to vacate the award is the ninety (90) day term prescribed in section 12 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 12. Consequently, since claimants themselves acknowledge that the instant petition was filed within ninety days of the award, Prudential urges this Court to accept the petition to vacate as timely, and consider it on its merits.

■ Under the FAA, notice of a motion to vacate must be served upon the adverse party or his attorney within three months after the award is filed or delivered. 9 U.S.C. § 12. In this case, Prudential filed its petition to vacate the award on March 9, 1994. As acknowledged by claimants, this date is well within the temporal constraints imposed by the FAA. To avert the inevitable conclusion, claimants correctly note that the parties agreed to arbitrate under the Rules of the New York Stock Exchange. They further maintain however, that these Rules impose upon Prudential an obligation to file any motion to vacate within thirty (30) days after notice of the award. As support for this position, they point to Rule 627(g) of the NYSE. The plain language of Rule 627(g) however, does not even address the question of a time limitation on motions for vacatur, but rather establishes when awards are to be paid and the precise moment at which interest begins to accrue on unpaid amounts of an award. Not surprisingly, claimants have not offered any authority in support of their

laws, Rules, Regulations, and/or Code of Arbitra-

rationale and we have found no cases adopting their interpretation of the Rule.

Claimants also contend that Commonwealth law required that Prudential file its petition within thirty (30) days, citing *Posadas de P.R. Associates, Inc. v. Asociación de Empleados de Casino*, 873 F.2d 479 (1st Cir. 1989), and *Unión de la Industria Licorera v. Destilería Serrallés*, 116 D.P.R. 348 (1985). The cases cited by claimants make it clear however, that the thirty day period referred to in *Posadas* is only applicable to vacatur actions filed under statutes other than the FAA. *Posadas* for example involved a dispute arising from a collective bargaining agreement between the corporation which operated the Condado Plaza Hotel & Casino, and a labor union representing certain of the hotel's staff. Alleging that the arbitrator's decision exceeded his authority, the hotel brought suit in federal court pursuant to section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, asking that the arbitral award be set aside. The complaint was filed thirty-one (31) days after the award was issued. Consequently, the district court dismissed the action as time-barred. The First Circuit noted that while section 301 extends federal jurisdiction to suits for violation of contracts between an employer and a labor organization, 29 U.S.C. § 185(a), it establishes no time limits. *Posadas*, 873 F.2d at 480. "Courts are therefore required to borrow the most suitable statute or other rule of timeliness from some other source." *Id.* (quoting *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 158, 103 S.Ct. 2281, 2287, 76 L.Ed.2d 476 (1983)). In the instant case, however, there is no need to borrow a rule of timeliness because, unlike the LMRA in *Posadas*, the FAA specifically provides the period during which a motion to vacate must be served— that is—within three months after the award is filed or delivered. 9 U.S.C. § 12.

■ Finally, claimants argue that since this is a diversity action, the *Erie* doctrine requires the Court to look to the law of

tion of the New York Stock Exchange.

Puerto Rico, rather than to the FAA.[2] Their argument is without merit. The FAA applies when there is federal subject matter jurisdiction, as when diversity of citizenship exists among the parties. *Moses H. Cone Memorial Hosp. v. Mercury Const.*, 460 U.S. 1, 25 n. 32, 103 S.Ct. 927, 942 n. 32, 74 L.Ed.2d 765 (1983). Diversity jurisdiction serves as a basis for invoking the provisions of the Act and not as a ground for invoking the application of judicially developed Commonwealth arbitration rules. *See Barbier v. Shearson Lehman Hutton, Inc.*, 948 F.2d 117, 120 (2d Cir.1991). Accordingly, we apply the three-month rule contained in section 12 of the FAA, and find that Prudential's petition to vacate the arbitration award was timely filed and served within the three month period following notice of the award. *See also, Escobar v. Shearson Lehman Hutton, Inc.*, 762 F.Supp. 461 (D.P.R.1991) (applying the three-month time limitation set forth in section 12 of the FAA); *Franco v. Prudential Bache Securities, Inc.*, 719 F.Supp. 63 (D.P.R.1989) (same). We therefore turn to the merits of this controversy.

We begin with the proper standard of review.[3] Prudential's petition to vacate the award is premised upon section 10 of the Federal Arbitration Act, 9 U.S.C. § 10.[4] The First Circuit has carefully delineated the scope of a court's review of arbitration awards under section 10:

The bases for review of arbitration awards are enumerated in 9 U.S.C. § 10. The statute does not allow courts to roam unbridled in their oversight of arbitral awards, but carefully limits judicial intervention to instances where the arbitration has been tainted in certain specific ways. In fine, section 10 authorizes vacatur of an award in cases of specified misconduct or misbehavior on the arbitrators' part, actions in excess of arbitral powers, or failures to consummate the award. The statute contains no express ground upon which an award can be overturned because it rests on garden variety factual or legal bevues. To the precise contrary, courts do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions by the lower courts. Even where such error is painfully clear, courts are not authorized to reconsider the merits of arbitration awards.

*Advest, Inc. v. McCarthy*, 914 F.2d 6, 8 (1st Cir.1990) (citations omitted). *Accord, Barbier v. Shearson Lehman Hutton, Inc.*, 948 F.2d at 120 (award may be vacated only if at least one of the grounds specified in 9 U.S.C. § 10 is found to exist.)

▇▇▇ To be sure, courts do retain the power to review arbitration awards outside of section 10. In this regard, "a successful

---

**2.** Commonwealth statutory provisions prescribe a three month limitations period for motions to reverse, modify or correct arbitration awards. *See* 32 L.P.R.A. § 3224.

**3.** The U.S. Supreme Court recently granted certiorari in a case that involves the proper standard of a court's review of an arbitrator's decision. *See Kaplan v. First Options of Chicago, Inc.*, 19 F.3d 1503 (3d Cir.1994), *reh'g denied*, 29 F.3d 111 (3d Cir.1994), *cert. granted, First Options of Chicago, Inc. v. Kaplan*, —— U.S. ——, 115 S.Ct. 634, 130 L.Ed.2d 539 (1994). While the subject is under review by the Supreme Court, we look to First Circuit precedent to provide the legal underpinnings for our analysis of the instant controversy.

**4.** The statute provides in pertinent part:

 (a) In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration—

 (1) Where the award was procured by corruption, fraud or undue means.

 (2) Where there was evident partiality or corruption in the arbitrators, or either of them.

 (3) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.

 (4) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

 (5) Where an award is vacated and the time within which the agreement required the award to be made has not expired the court may, in its discretion, direct a rehearing by the arbitrators.

9 U.S.C. § 10 (Supp.1995).

challenge to an arbitration award, apart from section 10, depends upon the challenger's ability to show that the award is (1) unfounded in reason and fact; (2) based on reasoning so palpably faulty that no judge, or group of judges, ever could conceivably have made such a ruling; or (3) mistakenly based on a crucial assumption that is concededly a non-fact." *Advest, Inc.* at 8–9. (quoting *Local 1445, United Food and Commercial Workers v. Stop and Shop Cos.,* 776 F.2d 19, 21 (1st Cir.1985)). Nevertheless, non-reviewability remains the general rule, and exceptions are few and far between. *Advest, Inc.,* at 8. Consequently, the standard is admittedly quite onerous: "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, a court's conviction that the arbitrator made a serious mistake or committed grievous error will not furnish a satisfactory basis for undoing the decision." *Id.* at 9. Underlying our analysis is the principle that courts are precluded from considering factual or legal issues which are by voluntary agreement made the subject of arbitration. *Mobil Oil v. Local 8–766, Oil, Chemical & Atomic,* 600 F.2d 322, 326 (1st Cir.1979).

Prudential's first claim is that the enforcement of the award in favor of claimants Tanner and Rodríguez would violate public policy. It relies principally on the U.S. Supreme Court decision in *W.R. Grace and Co. v. Local Union 759, International Union of United Rubber Workers,* 461 U.S. 757, 103 S.Ct. 2177, 76 L.Ed.2d 298 (1983), which held that when the enforcement of an arbitration award violates some explicit public policy, the courts are obliged to refrain from enforcing it. *Id.* at 766, 103 S.Ct. at 2183. In the instant case, Prudential propounds the existence of a public policy mandating that accurate and current books and records be maintained by securities firms. They suggest that such a policy is established by the combination of (1) section 17(a) of the Securities Exchange Act of 1934, (2) 17 C.F.R. § 240.17a–3 (Rule 17a–3) of the SEC, (3) Rule 440 of the NYSE, (4) Paragraph 4041 of the NASD Manual, and (5) the Releases and Administrative Decisions of the SEC. Prudential reasons that the award in favor of Tanner and Rodríguez should be vacated on public policy grounds due to their alleged violations of federal law arising from their failure to record puts to Schering Plough, PaineWebber and Squibb.

The U.S. Supreme Court has made clear that a court's refusal to enforce an arbitrator's interpretation of a contract is limited to situations where the contract as interpreted would violate some explicit public policy that is well defined and dominant, and is to be ascertained by reference to the law and legal precedents, and not from general considerations of supposed public interests. *United Paper Workers' International Union, AFL–CIO v. Misco, Inc.,* 484 U.S. 29, 43, 108 S.Ct. 364, 373–74, 98 L.Ed.2d 286 (1987). The Court's decision in *Misco, Inc.* forever dispelled any notion that its prior decision in *W.R. Grace,* supra, upon which Prudential relies, could be used to sanction a broad judicial power to set aside arbitration awards as against public policy. *Misco, Inc.,* 484 U.S. at 43, 108 S.Ct. at 373–74. Moreover, when reviewing an arbitration award being challenged on public policy grounds, the court must determine whether the arbitrators' interpretation of the contract runs afoul of a well-defined and dominant public policy, **taking the facts as found by the arbitrator.** *Board of County Commissioners of Lawrence County v. L. Robert Kimball & Associates,* 860 F.2d 683, 686 (6th Cir.1988) (emphasis ours). Here, the thrust of Prudential's argument is that the enforcement of the award in favor of Tanner and Rodríguez would validate their allegedly unlawful actions, which were contrary to public policy. The argument necessarily rests on the assumption that the actions of Tanner and Rodríguez were in fact unlawful and done without authorization. Prudential does not claim it was impeded from raising this argument before the panel of arbitrators. Indeed, the record shows that in fact this was the main theory upon which Prudential based its defense at the arbitration hearings. Nevertheless, the arbitrators' decision to award over one million dollars to each of these claimants suggests that they were unpersuaded by Prudential's allegations. Without delving into the merits of the evidence as presented during the arbitration hearings,

the panel did have before it evidence which tended to contradict Prudential's main contention that the transactions at issue were unauthorized.[5] In sum, even if Prudential's formulation of public policy is to be accepted, no violation of that policy was clearly shown, as evidenced by the award in favor of Tanner and Rodríguez. *Misco, Inc.,* 484 U.S. at 44, 108 S.Ct. at 374.

Prudential's next contention is that the award represents a manifest disregard of the law. In essence, Prudential argues that claimants were terminated for "just cause", in accordance with Commonwealth Law 80, 29 L.P.R.A. § 185, which provides the exclusive remedy for wrongfully discharged employees, and therefore are not entitled to any compensation. The "manifest disregard" language derives from dicta employed by the U.S. Supreme Court in *Wilko v. Swan,* 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953). *See Advest, Inc.* at 9 n. 5. "The lane of review that has opened out of this language is a judicially created one, not to be found in 9 U.S.C. § 10." *Id.*

█ In *Advest, Inc.,* the First Circuit identified two classes of cases where an arbitral award is subject to review under this standard. The first category, usually involving labor arbitration, is where an award is contrary to the plain language of the collective bargaining agreement. *Advest, Inc.* at 9. The second category involves instances where it is clear from the record that the arbitrator recognized the applicable law— and then ignored it. *Id.* As in *Advest,* Prudential is making a claim of the second type, asserting that the arbitrators' award is so irreconcilable with the provisions of Law 80 that the panel must have disregarded the law, and "embarked on a flight of fancy." *Id.* at 10. As expressly stated by the court in *Advest* however, the hurdle is a high one. In order to vacate an arbitration award, there must be some showing in the record, other than the result obtained, that the arbitrators knew the law and expressly disregarded it.

*Id.* at 10 (quoting *O.R. Securities, Inc. v. Professional Planning Assoc., Inc.,* 857 F.2d 742, 747 (11th Cir.1988)). The court construed the term "disregard" to imply that the arbitrators appreciated the existence of a governing legal rule but wilfully decided not to apply it. *Advest, Inc.* at 10. As arbitrators need not explain the reasons justifying their award,[6] and did not do so in this case, "it is no wonder that [Prudential] is hard pressed to satisfy the exacting criteria for invocation of the doctrine." *Id.*

█ Prudential's argument that it had just cause to terminate its relationship with claimants was considered and, judging from the award, rejected by the arbitrators. Furthermore, it is not disputed that Law 80 was not the only cause of action asserted by claimants in their quest for relief. Nor is it contested that claimants presented evidence regarding damages under Law 80 which directly contradicted that which was presented by Prudential. We therefore decline Prudential's invitation to revisit the merits of their factual contentions regarding just cause and the damages resulting from the termination of claimants.

█ In this last regard, it is well established that subject to the empowering clause, arbitrators possess latitude in crafting remedies as wide as that which they possess in deciding cases. *Advest Inc.* at 10–11. "That leeway is at its zenith when, as here, the arbitration clause imposes no limitation on choice of remedies." *Id.* at 11. As noted above, the panel had before it documentary and testimonial evidence, including expert testimony, regarding the damages alleged by both sides in the dispute. Under these circumstances, the panel might have reasonably given more weight to the claimants' damages calculations, and decided that the amounts ultimately awarded in compensation represented the fairest resolution of the controversy. Unquestionably, an arbitrator's remedial choices are not limited to those offered during the hearing. *Advest*

---

5. In addition, claimants introduced evidence that for all the hullaballoo surrounding the unrecorded transactions, Prudential failed to amend any reports regarding its compliance with capital requirements even after learning of their existence.

6. See *Raytheon Co. v. Automated Business Systems, Inc.,* 882 F.2d 6, 8 (1st Cir.1989); *Barbier v. Shearson Lehman Hutton, Inc.,* 948 F.2d at 121; Rules of the New York Stock Exchange.

*Inc.* at 10. Rather, the arbitrator can fashion them as part of his decisional discretion. *S.D. Warren Co. v. United Paperworkers' Int'l Union, Local 1069*, 845 F.2d 3, 8 (1st Cir.1988), *cert. denied*, 488 U.S. 992, 109 S.Ct. 555, 102 L.Ed.2d 582 (1988). For these reasons, the Court finds no merit in Prudential's contention that the award was issued in manifest disregard of the law.

■■■ Prudential's next argument is that the arbitrators refused to hear evidence pertinent and material to the controversy. *See* 9 U.S.C. § 10. This claim arises from the panel's refusal to extend discovery regarding claimants' financial condition beyond December 31, 1991. Upon close examination however, the record reflects that both sides had ample opportunity to gather the pertinent evidence until the December 31, 1991 cut-off date. In fact, some documents and other information were exchanged even during the proceedings. Plainly, the imposition of a discovery cut-off date is well within the panel's discretion. In this case, the actual hearings began on February 18, 1992 and stretched until December 8, 1993. A total of fifty-six (56) sessions were held before the arbitration panel. Under these circumstances, it is certainly understandable that the panel would utilize recognized management tools, such as a discovery cut-off date, in an attempt to get a handle on what proved to be an inordinately protracted arbitration proceeding. More importantly, at no time did the panel actually refuse to hear relevant evidence regarding the financial condition of claimants. Accordingly, the Court finds section 10(a)(3) of the FAA inapposite to the case at bar, and therefore denies Prudential's petition for relief in this regard.

■■■ Prudential also challenges the award of attorney's fees and costs in favor of claimants as excessive and unsupported by documentary evidence. Specifically with respect to the award of attorney's fees, it argues that such amounts are not available in this type of action because the issues raised in the arbitration proceedings allegedly were not frivolous and Prudential was not temerarious or obstinate in choosing to litigate those issues. Prudential cites to *Pérez Marrero v. Colegio de Cirujanos Dentistas de P.R.*, 92 J.T.S. 124 (1992) and *Elba A.B. v. U.P.R.*, 90 J.T.S. 13 (1990), in support of its position. In response, claimants aver that the award of attorney's fees in this case is not governed by the principles of temerity or obstinacy which in Puerto Rico determine whether a prevailing party in an ordinary civil suit is entitled to such an award. Rather, they reason that the award in this case is governed by Rule 629(c) of the Rules of the New York Stock Exchange, which enables the arbitrators, in their discretion, to determine which party shall bear the costs and expenses related to the proceedings. As noted above, the parties contractually agreed to arbitrate any disputes arising between them under the prevailing Rules of the New York Stock Exchange. Since Rule 629(c) of the NYSE leaves the determination of the amount of costs and expenses to be borne by the parties to the discretion of the arbitrators, this Court will not in hindsight attempt to second-guess the considered judgment of a panel of arbitrators who were first-hand witnesses to the entire proceedings. Moreover, given the longevity of this lawsuit, which is now going on its fifth year, and the intervenient arbitration proceedings, spanning 56 sessions, the Court is unpersuaded that the amounts in question are so unreasonable as to justify a refusal to enforce the award. Secondly, the arbitrators' award of attorney's fees and costs in favor of claimants may in fact reflect a finding that Prudential was indeed obstinate and/or temerarious in litigating some of the claims, or in its conduct during the course of the arbitration proceedings. Several examples of specific conduct on the part of Prudential have been offered by claimants to support just such a finding.

■■■ Finally, Prudential argues that no evidence was presented to adequately document and support the amount in costs awarded to claimants. They cite to the Commonwealth's Rules of Civil Procedure, as well as the Local Rules of the United States District Court for the District of Puerto Rico, for the proposition that a verified statement itemizing all expenses must be submitted, and the opposing party must be given an opportunity to oppose the request, before costs can be awarded in favor of the prevailing party.

However, Rule 629(c) of the NYSE, in this case the controlling rule, imposes no such requirements upon the successful party before costs can be awarded in its favor. Rather, it is sufficient that the costs be reasonably described and quantified, so that the opposing party may have an opportunity to adequately contest the amounts claimed. In the instant case, it is undisputed that claimants itemized those costs in their closing brief, filed on December 3, 1993, five days before the parties made their final arguments to the panel. At that time, Prudential chose not to challenge the accuracy or reasonableness of the amounts. Therefore, according the due deference to the panel of arbitrators, and in view of the latitude given to them by Rule 629(c), the Court finds no reason to vacate the award of attorney's fees and costs in favor of claimants.

 Prudential also argues that the entire arbitral award should be vacated because the arbitrators failed to grant it a final judgment on its claim for declaratory relief as to four promissory notes executed by Tanner and Rodríguez in favor of several employees, even though the arbitrators explicitly ruled during the hearing that the notes were not the obligation of Prudential. According to Prudential, the award must be vacated because the arbitrators failed to make a mutual, final and definite award upon the subject matter. 9 U.S.C. § 10(a)(4). In the alternative, Prudential asks the Court to modify the award under section 11 of the FAA, 9 U.S.C. § 11, and enter judgment stating it has no liability to any party on the personal promissory notes issued by Tanner and Rodríguez. The claimants do not dispute the fact that the panel decided this matter during the course of the arbitration proceedings. Instead they argue that since the ruling is reflected in the transcript of the particular session, and has not been challenged, the failure to include it as part of the final award constitutes, at best, an error of form which does not affect the validity of the final award. The parties are in agreement as to the particular ruling by the panel and its consequences. Clearly, the panel's omission does not affect the merits of the controversy in the sense that the exclusion of the ruling on the promissory notes from the final award does not affect the amounts to which claimants, or Prudential, are otherwise entitled under the award. Accordingly, as the award is imperfect in matter of form not affecting the merits of the controversy, and in order to effect the intent thereof, and promote justice between the parties, the Court hereby modifies the award to reflect the panel's ruling that Prudential is not liable for the promissory notes executed by Tanner and Rodríguez in favor of their employees. *See* 9 U.S.C. § 11(c).

 Similarly, the parties are in accord that the statement "during the course of the hearing, the arbitrators ordered that appropriate share of the bonus was to be paid to the claimants", as set forth on the first page of the award is inaccurate. The record shows that on June 3, 1992, the panel granted a summary award to claimants regarding their claim for moneys held by Prudential in a deferred compensation escrow fund. This award however, was completely unrelated to any claims brought for bonus compensation. At that time, Prudential was ordered to make payments to claimants of the *escrow funds*, together with any corresponding interest derived therefrom, within ten calendar days. Prudential in fact complied, and paid each claimant entitled to participate therein their share in the escrow fund. Plainly, the award contains an error of form in the description of the ruling made on June 3, 1992. Fortunately, the parties are in agreement that such is the case, and the imperfection does not affect the merits of the controversy. 9 U.S.C. § 11. Therefore, the Court hereby modifies and corrects the award to the effect that during the proceedings, Prudential was ordered to make payments to claimants of the escrow funds and corresponding interest, and *not*, as the award currently reads, to pay claimants their appropriate share of the bonus.

WHEREFORE, for the reasons stated above, Prudential's petition to vacate the arbitration award is DENIED. Instead, the award is confirmed as modified herein. Judgment shall be entered accordingly.

**SO ORDERED.**