72 F.3d 234
 11 IER Cases 453
 PRUDENTIAL-BACHE SECURITIES, INC., Plaintiff-Appellant,
v.
Robert D. TANNER, et al., Defendants-Appellees.
Jose F. RODRIGUEZ, et al., Plaintiffs-Appellees,
v.
PRUDENTIAL-BACHE SECURITIES, INC., Defendant-Appellant.
PRUDENTIAL-BACHE SECURITIES, INC., Plaintiff-Appellee,
v.
Robert D. TANNER, et al., Defendants-Appellants.
 Nos. 95-1590 to 95-1592.
 United States Court of Appeals,
First Circuit.
 Heard Nov. 9, 1995.
Decided Dec. 29, 1995.
 
 Thomas F. Curnin, with whom Roy L. Regozin, Cahill Gordon & Reindel, New York City, Guillermo J. Bobonis, Carlos Bobonis-Gonzalez, Bobonis, Bobonis & Rodriguez-Poventud, San Juan, PR, Louis J. Scerra, Jr. and Goldstein & Manello, P.C., Boston, MA, were on brief, for Prudential Securities Incorporated.
 Jose Angel Rey, Jackson Heights, NY, with whom Jose Luis Gonzalez-Castaner, San Juan, PR, and Harold D. Vicente, Santurce, PR, were on brief, for Robert D. Tanner, et al.
 Before TORRUELLA, Chief Judge, CAMPBELL, Senior Circuit Judge, and WATSON,* Judge.
 TORRUELLA, Chief Judge.
 
 
 1
 Appellant Prudential Securities Incorporated, formerly Prudential-Bache Securities, Inc. ("Prudential"), seeks the reversal of a judgment, entered in two consolidated actions, confirming arbitration awards entered by a panel of New York Stock Exchange arbitrators in favor of Jose F. Rodriguez ("Rodriguez"), Robert Tanner ("Tanner"), Garland Hedges ("Hedges"), Wolfram Pietri ("Pietri"), and Jose Cimadevilla ("Cimadevilla"), former employees of Prudential's subsidiary in Puerto Rico, Prudential-Bache Capital Funding Puerto Rico, Inc. ("PBPR"). Prudential argues that the award should be vacated on either of two grounds: first, that the arbitration award was in manifest disregard of Puerto Rico Law 80; and second, that it went against a well-defined and established public policy requiring that securities firms maintain accurate and current books and records. However, we find that Prudential neither meets the standard for the vacation of an award on the grounds of manifest disregard, set out in Advest, Inc. v. McCarthy, 914 F.2d 6 (1st Cir.1990), nor demonstrates that the arbitration panel found that appellees acted against public policy. Since its argument that the district court erred in refusing to vacate the awards of attorney's fees and costs also fails, we affirm the judgment of the court below on all points.
 
 BACKGROUND
 
 2
 The arbitration underlying this case arose out of Prudential's decision to close its Puerto Rican subsidiary and terminate the employment of several executives assigned to PBPR. On December 29, 1990, Rodriguez, former President of PBPR, together with his wife and their conjugal partnership, filed suit against Prudential, seeking compensation for his allegedly wrongful discharge. Appellant Prudential moved to compel arbitration, and the lower court stayed all discovery and ordered the parties to proceed with the arbitration of all claims pertaining to Rodriguez. The claims of his wife and their conjugal partnership were stayed pending the arbitration's outcome. Meanwhile, the claims of Tanner, Hedges, Pietri and Cimadevilla, all also former PBPR executives, were brought directly through arbitration.
 
 
 3
 An arbitration panel appointed by the New York Stock Exchange heard the parties' claims between February 1992 and December 1993. On January 7, 1994, the panel issued its award, under which Prudential was to pay Tanner $1,028,000, Rodriguez $1,014,250, Hedges $312,750, Pietri $310,750, and Cimadevilla $216,025. Various amounts in costs and attorney's fees were also awarded. When Rodriguez moved the district court for entry of judgment on the award, Prudential filed a petition to vacate the arbitration award as against all claimants on the grounds that (1) the award was against public policy; (2) the award was in conflict with Puerto Rico Law 80; (3) the award of attorney's fees was contrary to law; (4) the arbitrators improperly denied Prudential the opportunity to conduct discovery into the claimants' financial position and current earnings; (5) the award failed to properly record the decision of the arbitrators that Prudential was not responsible for promissory notes issued by Tanner and Rodriguez to their employees at Prudential in lieu of cash bonuses; and (6) the award incorrectly noted that the arbitrators ordered that appropriate shares of the bonus were to be paid to claimants. They contest the district court's findings on the first three of these issues on appeal.
 
 DISCUSSION
 A. Standard of Review
 
 4
 As the Supreme Court recently stated, "courts of appeals should apply ordinary, not special, standards when reviewing district court decisions upholding arbitration awards." First Options of Chicago, Inc. v. Kaplan, --- U.S. ----, ----, 115 S.Ct. 1920, 1926, 131 L.Ed.2d 985 (1995). Accordingly, we accept findings of fact that are not clearly erroneous and decide questions of law de novo. Id., --- U.S. at ----, 115 S.Ct. at 1926.
 
 
 5
 However, our discussion does not end there. "We must consider, of course, the district court's standard of review...." Kelley v. Michaels, 59 F.3d 1050, 1053 (10th Cir.1995). When a district court faces an arbitrator's decision, "the court will set that decision aside only in very unusual circumstances." First Options, --- U.S. at ----, 115 S.Ct. at 1923. The first set of "unusual circumstances" are laid out in Section 10(a) of the Federal Arbitration Act ("FAA"), 9 U.S.C. Sec. 10(a) (1994).[1] See Gateway Technologies v. MCI Telecommunications, 64 F.3d 993, 996 (5th Cir.1995) (laying out the scope of judicial review of arbitration awards in the light of First Options and the FAA).
 
 
 6
 Prudential relies on a second, narrower, set of grounds for review, established by case law for "manifest disregard of the law." See Wilko v. Swan, 346 U.S. 427, 436-37, 74 S.Ct. 182, 187-88, 98 L.Ed. 168 (1953) (creating the exception), overruled on other grounds by Rodriguez de Quijas v. Shearson/American Express, Inc., 490 U.S. 477, 484-85, 109 S.Ct. 1917, 1921-22, 104 L.Ed.2d 526 (1989); Advest, 914 F.2d at 9 n. 5 (noting that this judicially-created method of review is based on dicta in Wilko and not found in Sec. 10). The test for a challenge to an arbitration award for manifest disregard of the law is set out in Advest, Inc. v. McCarthy:
 
 
 7
 a successful challenge ... depends upon the challenger's ability to show that the award is "(1) unfounded in reason and fact; (2) based on reasoning so palpably faulty that no judge, or group of judges, ever could conceivably have made such a ruling; or (3) mistakenly based on a crucial assumption that is concededly a non-fact."
 
 
 8
 Advest, 914 F.2d at 8-9 (quoting Local 1445, United Food and Commercial Workers v. Stop & Shop Cos., 776 F.2d 19, 21 (1st Cir.1985)).
 
 
 9
 B. Timeliness of Prudential's Petition to Vacate
 
 
 10
 Before addressing Prudential's arguments, we examine a threshold issue appellees raise: whether Prudential's petition to vacate was timely. Appellees argue that Prudential's petition is governed by Rule 627(g) of the Rules of the New York Stock Exchange ("NYSE"), which they maintain establishes a 30-day period for filing petitions to vacate.[2] Since the petition was filed on March 9, 1994, sixty-one days after the award was issued, under appellees' reading of Rule 627(g), Prudential's petition would be time-barred. In turn, Prudential claims that its petition is governed by the 90-day period set out in Sec. 12 of the FAA, 9 U.S.C. Sec. 12 (1994),[3] and so is timely. The court below found that Section 12 of the FAA applies, and the petition is not time-barred. We affirm.
 
 
 11
 Appellees make their argument in two stages. First, they maintain that, since parties may agree to arbitrate under non-FAA rules,[4] and the parties submitted a Uniform Submission Agreement to the NYSE providing that the arbitration would be conducted in accordance with the rules of the exchange,[5] those rules trump the FAA. Second, they argue that Rule 626(g), by requiring payment of the award within 30 days of its receipt if a motion to vacate has not been filed, compels the conclusion that any challenge to an arbitration award must be filed within the same period.
 
 
 12
 We are not convinced, however. We do not question that the NYSE Rules apply. Where parties agree to a set of rules different than those of the FAA, "enforcing those rules according to the terms of the agreement is fully consistent with the goals of the FAA, even if the result is that arbitration is stayed where the Act would otherwise permit it to go forward." Volt, 489 U.S. at 479, 109 S.Ct. at 1256. While we agree with appellees' first premise, however, we do not subscribe to their second one.
 
 
 13
 Appellees seek to find a time limit in Rule 627(g) that it does not include. To support their reading of the rule, appellees argue that it is meant to operate as a stay of execution for the period during which the party may challenge the award. In that context, they maintain it would be senseless to allow such a stay for only 30 days if the period to file a petition to vacate is to be governed by the 90-day period of the FAA, as the award would be subject to enforcement during the 60 days following the expiration of the stay. While their logic holds some merit, they cannot escape the fact that the text of the Rule is clear. As stated by the court below, "[t]he plain language of Rule 627(g) ... does not even address the question of a time limitation on motions for vacatur, but rather establishes when awards are to be paid and the precise moment at which interest begins to accrue on unpaid amounts of an award." Rodriguez v. Prudential-Bache Sec., Inc., 882 F.Supp. 1202, 1206 (D.P.R.1995). We are unwilling to read a time limit into its language.
 
 
 14
 In contrast, the text of Section 12 is unambiguous, clearly setting out a 90-day time limit. Since the Rules of the NYSE provide no time limit, we find that the FAA 90-day provision applies, and appellant's petition is timely. See Escobar v. Shearson Lehman Hutton, Inc., 762 F.Supp. 461, 463 (D.P.R.1991) ("A party who seeks judicial review of an arbitration award must comply with the notice requirements of section 12...."); cf. Franco v. Prudential Bache Sec., Inc., 719 F.Supp. 63, 64 (D.P.R.1989) (finding motion to overturn an arbitration award untimely for failure to petition within 90-day period of Sec. 12).
 
 C. Manifest Disregard of the Law
 
 15
 As stated above, judicial review of arbitration awards is available where arbitrators have acted in manifest disregard of the law. See Wilko, 346 U.S. at 436-37, 74 S.Ct. at 187-88. As this court stated in Advest, Inc. v. McCarthy, arbitration awards are subject to review "where it is clear from the record that the arbitrator recognized the applicable law--and then ignored it."[6] 914 F.2d at 9.
 
 
 16
 Prudential argues that this is such a case. It asserts that appellees were terminated for "just cause" under Commonwealth Law 80, which sets out the remedy for employees under contracts without fixed duration who are wrongfully discharged. 29 L.P.R.A. Sec. 185a (Supp.1991). Law 80 details what constitutes just cause for discharge, including "[f]ull, temporary or partial closing of the operations of the establishment." 29 L.P.R.A. Sec. 185b(d) (Supp.1991). It provides an exclusive remedy.[7] See Alvarado-Morales v. Digital Equip. Corp., 843 F.2d 613, 615 n. 1 (1st Cir.1988) (noting the exclusiveness of the remedy for wrongful constructive discharge); Rodriguez v. Eastern Air Lines, Inc., 816 F.2d 24, 27-28 (1st Cir.1987) (finding that the remedy's exclusive nature precludes reinstatement claim).
 
 
 17
 Prudential contends that, given that the five appellees were discharged from employment in Puerto Rico under employment agreements without a fixed duration, Law 80 applies. Since the law provides an exclusive remedy, and the appellees' claims arise out of their termination, it argues, the only penalty appellees could claim for wrongful discharge would be that set by Law 80. Prudential carries its argument a step further, maintaining that under Section 185b(d) of Law 80 there was no wrongful discharge, as the employees were terminated in conjunction with the closing of PBPR.[8] Since "employees who are dismissed for cause are not entitled to the relief afforded by Act 80," Marti v. Chevron U.S.A., Inc., 772 F.Supp. 700, 705 (D.P.R.1991), Prudential concludes, the arbitrators' award is irreconcilable with Law 80, and so was made in manifest disregard of it.
 
 
 18
 In order to demonstrate that the arbitrator both recognized and ignored the applicable law, Advest, 914 F.2d at 9, " 'there must be some showing in the record, other than the result obtained, that the arbitrators knew the law and expressly disregarded it,' " id. at 10 (quoting O.R. Sec., Inc. v. Professional Planning Assocs., Inc., 857 F.2d 742, 747 (11th Cir.1988)). The demand for a showing in the record sets up a high hurdle for Prudential to clear, because where, as here, arbitrators do not explain the reasons justifying their award,[9] "appellant is hard pressed to satisfy the exacting criteria for invocation of the doctrine." Id. "In fact, when the arbitrators do not give their reasons, it is nearly impossible for the court to determine whether they acted in disregard of the law." O.R. Sec., 857 F.2d at 747. But see Advest, 914 F.2d at 10 (suggesting that a court could find arbitrators in disregard of the law despite the lack of a record where "the governing law [has] such widespread familiarity, pristine clarity, and irrefutable applicability that a court could assume the arbitrators knew the rule and, notwithstanding, swept it under the rug.").
 
 
 19
 In the present case Prudential's argument is thwarted by the fact that the arbitrators did not explain the reasons behind their award. It is undisputed that Law 80 was not the only cause of action asserted by Prudential's former employees before the arbitrators. What is more, it is equally uncontested that appellees presented evidence regarding damages under Law 80 in contradiction of Prudential's position. Given the fact that the panel members heard conflicting arguments, it is difficult to maintain that they both recognized the applicable law and then ignored it, id. at 9, without the benefit of a statement of their reasons. The broad leeway arbitrators enjoy in determining remedies, see id. at 11; Challenger Caribbean Corp., 903 F.2d at 869, further stymies Prudential's attempt to demonstrate a manifest disregard of the law on the part of the panel, given that their remedial options are not limited to those offered during the hearing. Advest, 914 F.2d at 11.
 
 
 20
 Accordingly, we are not convinced that the court below abused its discretion in finding that, judging from the award, the arbitrators considered and rejected Prudential's argument that it had just cause to terminate appellees.[10] Therefore, like the district court before us, we "decline Prudential's invitation to revisit the merits of their factual contentions", Rodriguez, 882 F.Supp. at 1209, and affirm their decision. Cf. O.R. Sec., 857 F.2d at 748 ("The record of the arbitration proceedings in this case shows that the issue of successor liability was clearly presented to the arbitrators and the arbitrators declined to state reasons for their conclusions. This ends the inquiry.").
 
 D. Public Policy
 
 21
 Prudential argues that the awards in favor of appellees Tanner and Rodriguez should be vacated because they are contrary to a well-defined and dominant public policy requiring that securities firms maintain correct books and records. Specifically, Prudential asserts that Tanner and Rodriguez failed to record three puts[11] to Schering Plough, PaineWebber and Squibb, as well as a one million dollar rebate (together, the "transactions"). The failure to record the transactions, it asserts, violates a dominant public policy demanding accurate books and records.
 
 
 22
 A court may vacate an arbitration award where the arbitration agreement as interpreted would violate public policy. See United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 42-43, 108 S.Ct. 364, 373, 98 L.Ed.2d 286 (1987); W.R. Grace & Co. v. Local Union 759, United Rubber Workers, 461 U.S. 757, 766, 103 S.Ct. 2177, 2183, 76 L.Ed.2d 298 (1983). However, this authority does not include "a broad judicial power to set aside arbitration awards as against public policy." Misco, 484 U.S. at 43, 108 S.Ct. at 373. Rather, the court's power is limited "to situations where the contract as interpreted would violate 'some explicit public policy' that is 'well defined and dominant, and is to be ascertained "by reference to the laws and legal precedents and not from general considerations of supposed public interests." ' " Id. (quoting W.R. Grace, 461 U.S. at 766, 103 S.Ct. at 2183).
 
 
 23
 In United Paperworkers Int'l Union v. Misco, Inc., the Supreme Court set out two requirements for overturning arbitration awards on the grounds of public policy. First, the "alleged public policy must be properly framed under the approach set out in W.R. Grace." Id. This demands "examination of whether the award created any explicit conflict with other 'laws and legal precedents' rather than an assessment of 'general considerations of supposed public interests.' " Id. (quoting W.R. Grace, 461 U.S. at 766, 103 S.Ct. at 2183); see W.R. Grace, 461 U.S. at 766, 770, 103 S.Ct. at 2183, 2185-86 (finding that obedience of judicial orders and voluntary compliance with Title VII of the Civil Rights Act of 1964 are two such public policies). Second, "the violation of such a policy must be clearly shown if an award is not to be enforced." Misco, 484 U.S. at 43, 108 S.Ct. at 373.
 
 
 24
 To meet the demands of the first requirement and demonstrate that the policy is "ascertained 'by reference to the laws and legal precedents,' " id. (quoting W.R. Grace, 461 U.S. at 766, 103 S.Ct. at 2183), Prudential points to the reporting requirements set out for registered broker-dealers in Section 17(a) of the Securities Exchange Act of 1934, 15 U.S.C. Sec. 78q(a) (1994), and the rules promulgated under that Act, SEC Rule 17a-3, 17 C.F.R. Sec. 240.17a-3 (1994), as well as the rules of self-regulatory organizations. See, e.g., 2 New York Stock Exchange Guide, Rule 440 (1989). All of these statutes and rules mandate recording transactions like those of Tanner and Rodriguez in the books and records of the registered broker-dealer. It is not disputed that these regulations applied to the transactions.
 
 
 25
 We need not address, however, whether these reporting requirements establish an explicit public policy such that the "award create[s] any explicit conflict with other 'laws and legal precedents.' " Misco, 484 U.S. at 43, 108 S.Ct. at 373 (quoting W.R. Grace, 461 U.S. at 766, 103 S.Ct. at 2183). Since the second requirement of the Misco analysis demands that the violation of the policy "be clearly shown," id., and Prudential cannot show that the arbitration panel found that Tanner and Rodriguez violated public policy, its argument fails.
 
 
 26
 In reviewing an arbitration award challenged on public policy grounds, we "tak[e] the facts as found by the arbitrator." Board of County Comm'rs v. L. Robert Kimball and Assocs, 860 F.2d 683, 686 (6th Cir.1988), cert. denied, 494 U.S. 1030, 110 S.Ct. 1480, 108 L.Ed.2d 617 (1990); see Misco, 484 U.S. at 45, 108 S.Ct. at 374 ("The parties did not bargain for the facts to be found by a court, but by an arbitrator chosen by them...."). Although the parties are in dispute whether Tanner and Rodriguez' failure to record the transactions is an admitted fact, Prudential's argument is again undercut by the arbitrators' decision not to explain their award. The arbitration panel heard Prudential's claims, and its award of more than one million dollars each to both Tanner and Rodriguez "suggests that they were unpersuaded by Prudential's allegations."[12] Rodriguez, 882 F.Supp. at 1208. In the face of the panel's silence and its awards, we cannot conclude that the arbitrators, in their fact-finding capacity, necessarily found that there was a recording violation, and we refuse to do so in their stead. See Misco, 484 U.S. at 44-45, 108 S.Ct. at 374 (holding that for the Court of Appeals to draw inferences from known facts was an "inappropriate" exercise in factfinding).
 
 E. Attorney's Fees and Costs
 
 27
 Prudential's final contention is that the arbitrators' awards of attorney's fees and costs to the appellants should be vacated. First, it claims that the award of attorney's fees is not contemplated by Rule 629(c) of the NYSE.[13] Prudential argues that because the rule does not explicitly mention attorney's fees, to assume it provides an implicit independent basis for awarding them is contrary to the general American rule that parties typically bear their own legal fees. See Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 247, 95 S.Ct. 1612, 1616-17, 44 L.Ed.2d 141 (1975), superseded by statute as stated in Stanford Daily v. Zurcher, 550 F.2d 464, 465-66 (9th Cir.1977). Second, Prudential points out that under Puerto Rico law attorney's fees may be awarded only if provided for by statute, or against a party which raises and obstinately pursues meritless claims or otherwise vexatiously engages in unnecessary litigation. See Perez Marrero v. Colegio de Cirujanos Dentistas, 92 J.T.S. 124 (1992); Elba A.B. v. Universidad de Puerto Rico, 90 J.T.S. 13 (1990). Prudential argues that no judge could reasonably find that it raised frivolous claims or pursued them improperly, given its claims of violations of the record-keeping requirements by Rodriguez and Tanner.
 
 
 28
 We disagree. Since Prudential does not state its basis for overturning the award, we presume it is relying on Section 10(a)(4) of the FAA, which provides that courts may set aside awards when the arbitrators exceed their powers. 9 U.S.C. Sec. 10(a)(4). This award was, however, within the panel's authority. First, we do not think that the district court read an implicit basis for awarding attorney's fees into Rule 629(c). The rule states that it provides for "costs and expenses, unless applicable law directs otherwise." We read this language to include attorney's fees, and have found no case law suggesting otherwise.[14]
 
 
 29
 Second, although not noted by the court below, the record reveals that both parties requested attorney's fees from the panel (Joint Appendix, pp. 811, 923-24), suggesting that awarding fees was contemplated by the parties to be within the scope of the agreement to arbitrate. The case law suggests that this is an important factor. See Bacardi Corp. v. Congreso de Uniones Industriales, 692 F.2d 210, 214 (1st Cir.1982) (finding arbitrator exceeded his authority awarding attorney's fees where grieving union did not claim them, and their award "did not draw its essence from the collective bargaining agreement"); Wing v. J.C. Bradford & Co., 678 F.Supp. 622, 626 (N.D.Miss.1987) (confirming NYSE arbitration panel award of attorney's fees where parties submitted the award of fees to panel).
 
 
 30
 Third, Prudential is correct in stating that Puerto Rico law demands a finding that a "party or its lawyer has acted obstinately or frivolously." P.R.R.Civ.P. 44.1(d). However, appellees offered examples of Prudential's conduct to support such a conclusion. It is reasonable to find that the fact that the panel awarded attorney's costs indicates it found Prudential obstinate and/or temerarious in litigating some of the claims, or in its conduct. Thus, given that the panel had evidence in front of it as to obstinate or frivolous conduct, that both parties requested attorney's fees, and that the NYSE Rules provide for the award of fees, we cannot conclude that the arbitrators exceeded the scope of their authority under Section 10(a)(4).
 
 
 31
 Finally, Prudential argues that the former employees failed to leap a procedural hurdle, since they did not submit a verified statement to the panel itemizing all expenses sought, as mandated by Puerto Rico civil procedure. P.R.R.Civ.P. 44.1(a), (b). In so arguing, Prudential ignores the fact that the parties agreed to arbitrate under the rules of the NYSE, and Rule 629(c) imposes no itemization requirement. Nevertheless, the appellees itemized their costs in their closing brief, filed five days before the parties made their final arguments to the panel. While Prudential had the opportunity to challenge the accuracy or reasonableness of the costs, it chose not to do so. Therefore, because we do not find that the arbitration panel clearly exceeded the scope of its powers, and giving its decision the deference due to arbitrators, we find that the award of attorney's fees should not be vacated. Cf. Advest, 914 F.2d at 8 (stating that even where arbitrators' factual or legal error is "painfully clear," courts may not reconsider an award's merits).
 
 CONCLUSION
 
 32
 For the foregoing reasons, the judgment of the district court is affirmed.
 
 
 
 *
 Of the United States Court of International Trade, sitting by designation
 
 
 [1]
 Section 10(a) provides that a court may vacate an award:
 (1) Where the award was procured by corruption, fraud, or undue means.
 (2) Where there was evident partiality or corruption in the arbitrators....
 (3) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.
 (4) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.
 (5) Where an award is vacated and the time within which the agreement required the award to be made has not expired the court may, in its discretion, direct a rehearing by the arbitrators.
 9 U.S.C. Sec. 10(a) (1994); see Advest, 914 F.2d at 8 (stating that Sec. 10 "carefully limits judicial intervention").
 
 
 [2]
 The Rule states:
 All monetary awards shall be paid within thirty (30) days of receipt unless a motion to vacate has been filed with a court of competent jurisdiction. An award shall bear interest from the date of the award: (i) if not paid within thirty (30) days of receipt, (ii) if the award is the subject of a motion to vacate which is denied, or (iii) as specified by the arbitrator(s) in the award. Interest shall be assessed at the legal rate, if any, then prevailing in the state where the award was rendered, or at a rate set by the arbitrator(s).
 
 
 [2]
 New York Stock Exchange Guide, Rule 627(g) (1989)
 
 
 [3]
 The Rule states, in pertinent part:
 Notice of a motion to vacate, modify or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered.
 9 U.S.C. Sec. 12 (1994).
 
 
 [4]
 See Mastrobuono v. Shearson Lehman Hutton, --- U.S. ----, ----, 115 S.Ct. 1212, 1216, 131 L.Ed.2d 76 (1995) (noting that "the FAA's pro-arbitration policy does not operate without regard to the wishes of the contracting parties"); Volt Info. Sciences, Inc. v. Board of Trustees, 489 U.S. 468, 479, 109 S.Ct. 1248, 1256, 103 L.Ed.2d 488 (1989) ("Arbitration under the Act is a matter of consent, not coercion, and parties are generally free to structure their arbitration agreements as they see fit")
 
 
 [5]
 Each appellee signed an Employment Agreement with Prudential that contained an arbitration clause. The clause provided for, inter alia, settlement of all claims arising between Prudential and its employees through arbitration under the prevailing Constitution and Rules of the NYSE. Also, the Submission Agreement which the parties filed with the NYSE shows that they submitted their dispute to arbitration in accordance with that body's Rules, Constitution, By-laws, Regulations, and/or Code of Arbitration
 
 
 [6]
 We emphasize that this is a narrow basis for review: a mere mistake of law by an arbitrator cannot serve as the basis for judicial review. We have long recognized the general rule that "courts are not to review the merits of an arbitral award." Challenger Caribbean Corp. v. Union General de Trabajadores, 903 F.2d 857, 861 (1st Cir.1990). They "do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts." United Paperworkers Intern. Union v. Misco, Inc., 484 U.S. 29, 38, 108 S.Ct. 364, 371, 98 L.Ed.2d 286 (1987). Thus our review is circumscribed by the provisions of Section 10(a) and the specifications of the "manifest disregard of the law" test laid out by this court in Advest
 
 
 [7]
 While "[t]here is no question that Act No. 80 is the exclusive remedy for wrongful discharge in Puerto Rico," Weatherly v. International Paper Co., 648 F.Supp. 872, 875 (D.P.R.1986), three exceptions exist to the rule that Law 80 precludes other civil actions against an employer who wrongfully terminates an employee. They arise (1) when a plaintiff has an independent cause of action for a tort committed in the course of the discharge, Vargas v. Royal Bank of Canada, 604 F.Supp. 1036, 1039 (D.P.R.1985); (2) when a plaintiff is protected by other social legislation, Weatherly, 648 F.Supp. at 877 n. 8 (listing the twelve statutes that provide remedies for employment termination alongside Law 80); and (3) when the plaintiff's termination violates his or her constitutional rights, In re El San Juan Hotel Corp., 149 B.R. 263, 273 (D.P.R.1992); Santini Rivera v. Serv. Air, Inc., 94 JTS 121 (Hernandez Denton, J., concurring)
 This is not to say, however, that the parties to an employment contract cannot make an agreement regarding indemnification in the case of wrongful termination. See Santoni Roig v. Iberia Lineas Aereas de Espana, 688 F.Supp. 810, 817 (D.P.R.1988) (allowing recovery under Law 80 when parties had been indemnified according to a collective bargaining agreement, stating that Law 80 "is an independent statute that provides for a separate cause of action for monetary relief regardless of the terms of the collective bargaining agreement.").
 
 
 [8]
 Prudential makes the additional arguments that appellee Tanner's alleged failure to record a transaction in accordance with federal and company rules provided just cause for termination, and that appellee Rodriguez' decision to resign was not constructive discharge under Law 80. These arguments are also defeated under the analysis presented below
 
 
 [9]
 It is well established that arbitrators are not required to either make formal findings of fact or state reasons for the awards they issue. Labor Relations Div. of Constr. Indus. of Mass., Inc. v. International Bhd. of Teamsters, 29 F.3d 742, 747 (1st Cir.1994); Raytheon Co. v. Automated Business Sys., Inc., 882 F.2d 6, 8 (1st Cir.1989)
 
 
 [10]
 The parties briefly debate two grounds for recovery concurrent to Law 80: (1) whether the appellees' claims for emotional and mental suffering are based on tortious conduct separate and independent from the termination of their employment for the purposes of Law 80; and (2) whether a partnership between Tanner, Cabrer, Rodriguez and Prudential was formed under Puerto Rico law. We find that the arbitrators may have rejected Prudential's just cause argument and therefore uphold their award. Accordingly, we need not address the details of these disputes
 
 
 [11]
 A put is "[a]n option permitting its holder to sell a certain stock or commodity at a fixed price for a stated quantity and within a stated period. Such a right is purchased for a fee paid the one who agrees to accept the stock or goods if they are offered." Black's Law Dictionary 1237 (6th ed. 1990)
 
 
 [12]
 Prudential asserts that the district court improperly relied on an issue Prudential did not raise before it, namely, that the transactions were done without authorization. Indeed, the district court characterizes the authorization issue as "Prudential's main contention." Rodriguez, 882 F.Supp. at 1209. However, its discussion of Prudential's argument to the panel as well as the arbitrators' decision, quoted above, refers not only to the authorization issue, but also to Prudential's "assumption that the actions ... were in fact unlawful." Id. at 1208. Therefore, we can rely on these findings of the district court in our discussion of whether there was a clear violation of public policy, without being guilty of factfinding
 
 
 [13]
 That rule provides, in pertinent part:
 In addition to forum fees, the arbitrator(s) may determine in the award the amount of costs incurred pursuant to Rules 617, 619 and 623 and, unless applicable law directs otherwise, other costs and expenses of the parties. The arbitrator(s) shall determine by whom such costs shall be borne.
 
 
 [2]
 New York Stock Exchange Guide, Rule 629(c) (1989)
 
 
 [14]
 In fact, we have found little case law on this issue, although there is certainly precedent for the award of attorney's fees. See, e.g., Phoenix Central v. Dean Witter Reynolds, Inc., 768 F.Supp. 702, 703 (D.Ariz.1991) (granting order to confirm NYSE panel arbitration award including attorney's fees); Barbier v. Shearson Lehman Hutton, 752 F.Supp. 151, 154 (S.D.N.Y.1990) (confirming NYSE arbitrators' award of attorney fees without comment), aff'd in part, rev'd in part, 948 F.2d 117 (2d Cir.1991). What cases we have found addressing whether arbitrators should have awarded attorney's fees analyze the issue under state law, not the Rules of the NYSE. See, e.g., Zate v. A.T. Brod & Co., 839 F.Supp. 27, 29 (M.D.Fla.1993) (analyzing whether arbitrator should have awarded attorney's fees under Florida law); Emrick v. Deutsche Bank Capital Corp., No. 91 Civ. 0592, 1991 WL 61091, at * 2-4 (S.D.N.Y. Apr. 15, 1991) (weighing NYSE panel's failure to award attorney's fees under New York labor law)