**FLEXIBLE MANUFACTURING SYS-TEMS PTY LTD., an Australian corporation, Plaintiff,**

v.

**SUPER PRODUCTS CORPORATION, a Wisconsin corporation, Defendant.**

No. 89–C–1032.

United States District Court,
E.D. Wisconsin.

Dec. 22, 1994.

Thomas R. Streifender, Gibbs, Roper & Williams, Robert E. Wrenn, Wrenn & Wille, Milwaukee, WI, for plaintiff.

Patrick B. Howell, Whyte, Hirschboeck & Dudek, Milwaukee, WI, for defendant.

## MEMORANDUM AND ORDER

WARREN, Senior District Judge.

Now before the Court is the motion of defendant Super Products Corporation ("Super Products") to vacate an arbitration award in favor of plaintiff Flexible Manufacturing Systems Pty Ltd. ("Flexible") for a breach of contract. For the following reasons, this motion will be denied.

### I. BACKGROUND

In 1988, Flexible and Super Products entered into a contract ("License Agreement") which enabled Flexible, an Australian company, to manufacture, sell, and operate certain proprietary vacuum loading products owned and manufactured by Super Products, a Wisconsin corporation. The relationship between the two companies soon soured with both parties alleging various failures to perform obligations under the contract. On August 24, 1989, Flexible filed this action against Super Products alleging breach of contract and fraud.

On February 11, 1991, this Court entered an order granting Super Products' motion to compel arbitration pursuant to a clause in the License Agreement which provides that, in the event of an insoluble dispute between the parties, "such dispute or difference shall be referred to and determined by the Commercial Arbitration Association in the United States." (License Agreement § 11). The Court bifurcated the dispute ordering the parties to arbitrate the breach of contract claims before the American Arbitration Association and retaining jurisdiction over Flexible's fraud in inducement claims. Flexible's fraud claims were held in abeyance pending the outcome of the arbitration. (Order of February 11, 1991 at 8–9).

On November 9, 1992, Flexible commenced arbitration before the American Arbitration Association by filing a Demand for Arbitration asserting its breach of contract claims. Super Products responded and filed a counterclaim. A three-person arbitration panel was selected and seventeen days of evidentiary hearings were held. The panel heard testimony from sixteen witnesses, received over 400 exhibits, heard closing arguments from counsel and considered post-hearing briefs filed by both parties. On March 7, 1994, the arbitrators issued an award of $2,000,000 to Flexible, $20,395 to Super Products, and costs to Flexible in the amount of $28,000. The panel was split two-to-one, with one arbitrator dissenting from the award. No written opinions were issued.

### II. LEGAL STANDARD

#### A. APPLICABLE LAW

The parties chose to have this dispute governed by Wisconsin law; the License Agreement provides that "the governing law should be that of the state of Wisconsin." (License Agreement at ¶ 11). However, they now disagree as to whether the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., or the Wisconsin Arbitration Act, Wis.Stats. § 788.01 et. seq., should apply to this motion to vacate.

■ The Supreme Court has held that the Federal Arbitration Act does not pre-empt all state arbitration statutes. Volt Information Sciences, Inc. v. Bd. of Trustees of Leland Stanford Jr. Univ., 489 U.S. 468, 477, 109 S.Ct. 1248, 1255, 103 L.Ed.2d 488 (1989) ("The FAA contains no express pre-emptive provision, nor does it reflect a congressional intent to occupy the entire field of arbitration."). In Volt, the Court concluded that, although state law may be preempted by the FAA if it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," Id. at 477, 109 S.Ct. at 1255 quoting Hines v. Davidowitz, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941), "it does not follow that the FAA prevents the enforcement of agreements to arbitrate under different rules than those set forth in the act itself.... Just as [parties] may limit by contract the issues which they will arbitrate, ... so too may they specify by contract the rules under

which that arbitration will be conducted." *Id.* 489 U.S. at 479, 109 S.Ct. at 1256. *See also Flight Systems v. Paul A. Lawrence Co.,* 715 F.Supp. 1125, 1127 (D.D.C.1989). Therefore, whether the FAA preempts the Wisconsin arbitration statute will depend upon whether the Wisconsin law in some way undermines the purpose of the FAA.

■ The FAA is a substantive law which Congress intended to apply to transactions affecting interstate and international commerce. *Southland Corp. v. Keating,* 465 U.S. 1, 10–14, 104 S.Ct. 852, 854–860, 79 L.Ed.2d 1 (1984) ("[T]he purpose of the [FAA] was to assure those who desired arbitration and whose contracts related to interstate commerce that their expectations would not be undermined by federal judges or ... by state courts or legislatures.") (*quoting Metro Industrial Painting Corp. v. Terminal Construction Co.,* 287 F.2d 382, 387 (2d Cir.1961) (Lumbard, C.J., concurring)). Thus, as long as the Wisconsin act protects the parties' choice of resolution of their disputes through arbitration, it will not conflict with the FAA and thus will not be preempted thereby.

■ The provision relating to the vacation of arbitration awards in the Wisconsin act contains language identical to that found in the corresponding section of the FAA. Both provide for very limited and specific grounds upon which a court can vacate an arbitration award. Therefore, it is impossible to say that the Wisconsin law undermines the purpose of the federal act; the same values of limited judicial review are protected. The Court thus concludes that the FAA does not preempt Wisconsin law, and therefore it will apply the Wisconsin statute, and

the case law interpreting it, to this motion. However, because of the identical language in the state and federal statutes, federal case law is persuasive authority. *See Diversified Management Services, Inc. v. Slotten,* 119 Wis.2d 441, 446, 351 N.W.2d 176 (Wis.App. 1984).

### B. *VACATION OF ARBITRATION AWARD*

The grounds for overturning an arbitration award are extremely narrow; the Wisconsin Supreme Court has "adopted a 'hands-off' approach to arbitration awards." *City of Madison v. Madison Professional Police Officers Association* ("Madison Police"), 144 Wis.2d 576, 587, 425 N.W.2d 8 (1988). The *Madison Police* Court explained this "hands-off" policy as follows:

> [T]he court will not overturn the arbitrator's decision for mere errors of law or fact, but only when 'perverse misconstruction or positive misconduct [is] plainly established, or if there is a manifest disregard of the law or if the award itself is illegal or violates strong public policy.' These narrow grounds for overturning an arbitrator's award are echoed in the controlling statute on arbitration.

*Madison Police,* 144 Wis.2d at 586, 425 N.W.2d 8.

The Wisconsin Arbitration Act provides several specific grounds for vacating an arbitration award. One statutory basis for the vacation of an award is "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final and definite award on the subject matter submitted was not made." Wis.Stats. § 788.10(1)(d).[1] It is upon this basis that Super Products seeks to vacate the arbitration award.[2]

---

1. Other grounds for vacating an award, not asserted by Super Products include:

   (a) Where the award was procured by corruption, fraud or undue means;

   (b) Where there was evident partiality or corruption on the part of the arbitrators;

   (c) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or any other misbehavior by which the rights of any party have been prejudiced. Wis. Stats. § 788.10.

2. Super Products also argues, somewhat cursorily, that it was denied its right to a fundamentally fair hearing by the conduct of the arbitrators. The Court finds this argument completely without merit. Super Products points to no evidence of any misbehavior by the arbitrators which prejudiced its rights.

   Super Products also insinuates that there was positive misconduct on the part of the arbitrators, suggesting in a footnote to its brief that one of the arbitrators appeared to be napping. The Court finds this argument meritless as well, as Super Products has offered no argument or evidence to support its position.

■ While this statutory provision does permit a court to vacate an arbitration award if the arbitrators exceed their authority by completely disregarding the law and dispensing their own brand of justice, *Nicolet High School Dist. v. Nicolet Educ. Ass'n,* 118 Wis.2d 707, 713, 348 N.W.2d 175 (1984), the award is presumed to be valid and will be disturbed only when its invalidity is demonstrated by clear and convincing evidence. *Id.* at 712, 348 N.W.2d 175. As long as the award is based on *an* interpretation of the contract, even if the interpretation is unsound, the award will be upheld. *Ethyl Corp. v. United Steelworkers of America,* 768 F.2d 180, 184–85 (7th Cir.1985) *cert. denied* 475 U.S. 1010, 106 S.Ct. 1184, 89 L.Ed.2d 300 (1986); *Fortney v. School Dist. of West Salem,* 108 Wis.2d 167, 179 321 N.W.2d 225 (1982). Thus, "the question for decision by a federal court asked to set aside an arbitration award ... is not whether the arbitrator or arbitrators erred in interpreting the contract; it is not whether they clearly erred in interpreting the contract; it is not whether they grossly erred in interpreting the contract; it is whether they interpreted the contract." *Hill v. Norfolk and Western Ry. Co.,* 814 F.2d 1192, 1194–95 (7th Cir.1987).

### III. *DISCUSSION*

■ In support of its motion to vacate, Super Products argues that the arbitrators exceeded their authority by essentially amending the License Agreement and dispensing their own brand of justice, independent of the underlying agreement between the parties. Essentially, Super Products contends that the award directly conflicts with the stated provisions of the License Agreement because the agreement, by its own terms, would be terminated by certain events, which, according to Super Products, did in fact occur. Therefore, because the agreement was terminated, and because Flexible was thus no longer entitled to manufacture or sell the equipment it licensed from Super Products, it is inconceivable that it suffered any damages in terms of lost profits.

Section 9 of the License Agreement describes the circumstances under which the contract would terminate. It provides, in pertinent part:

(a) If either party contravenes any of the provisions of this Agreement, the other party may give notice of the default. . . . If the party in breach does not rectify the breach within ninety (90) days from the date of receipt of the notice, then this agreement shall terminate, subject to the terms and conditions hereinafter set forth.

\* \* \* \* \* \*

(c) This agreement shall terminate automatically in the event [of] the Licensee ... becoming bankrupt or plac[ing] any of its property in liquidation for the purpose of meeting claims of its creditors.

(License Agreement at ¶ 9). Super Products contends that both of these conditions occurred.

On October 17, 1989, after the commencement of this litigation, Super Products formally alleged that Flexible was in default of the contract for several reasons, and provided notice thereof to Flexible. Super Products contends that Flexible failed to rectify any of these stated defaults within ninety (90) days and that therefore the contract was terminated pursuant to ¶ 9(a). Moreover, Super Products points to the fact that Flexible surrendered its property for liquidation in order to satisfy its creditors and that thus the contract was also terminated pursuant to ¶ 9(c).

In support of its motion, Super Products contends that, because the License Agreement was clearly terminated, the arbitration award of future lost profits for any time period following termination ignores the express terms of the License Agreement, and thus the award is beyond the scope of the arbitrators' powers and subject to vacation under Wis.Stats. § 788.10. According to Super Products:

Flexible's right to make [sales pursuant to the license agreement] ceased as of January 16, 1990. Only by reason of, and due to, the License Agreement was Flexible able to manufacture and sell Equipment. *Without the License Agreement, Flexible had no entitlement to manufac-*

*ture and sell the Equipment or to make a profit on such sales.*

The arbitration award mirrors the Flexible damage statement [based on lost profits]. The arbitration award provided for a recovery based solely and exclusively *on the contract and its continuation.* Because the award is premised on continuation of the License Agreement, the arbitration award simply ignores the irrefutable fact that the Agreement was justly and properly extinguished.

(Defendant's Brief in Support of Motion to Vacate Arbitration Award at 13–14) (emphasis in original). Super Products took this same position in the arbitration proceeding.

In response, Flexible argues—as it did before the arbitrators—that Super Products failed to fulfill its obligations under the License Agreement and that therefore Flexible was forced to initiate this litigation. Flexible has alleged, *inter alia,* that Super Products breached Section 5 of the License Agreement by failing to provide Flexible with adequate proprietary information necessary for the manufacture of the products covered by the License Agreement. (Statement of Claim of Flexible Manufacturing Before Arbitrators at ¶¶ 1, 2; Amended Complaint at ¶ 9).

Thus, Flexible's position is that Super Products breached the License Agreement first, and that the termination of the contract by Super Products for Flexible's alleged breaches was pretextual. As such, the termination "could not insulate Super Products from the consequences of its conduct." (Plaintiff's Response at 5–6). Therefore, the arbitrators' "conclusion that the damages flowing from Super Products' initial breach were not stopped by its wrongful termination is an obvious application of the language of the contract to the facts." (Plaintiff's Response to Defendant's Motion to Vacate at 8). Moreover, Flexible claims that its receiver-

ship was caused by Super Products' breach of the License Agreement, and that this argument was also presented to the arbitration panel. According to Flexible, "[i]f the arbitrators were persuaded that the receivership itself was a natural and proximate consequence of Super Products' breach of the agreement, they were correct in not permitting Super Products to benefit from its own misconduct." (Plaintiff's Response at 8 (footnote omitted)).

Flexible contends that the arbitration panel was presented with conflicting arguments as to which party breached the License Agreement. The arbitrators considered the version of events presented by each party, disagreed with Super Products' version of the facts, and entered an award accordingly. According to Flexible, this is the essence of the arbitral function, and it would be inappropriate to vacate an award on such grounds.

We agree. It is clear that the arbitration panel was presented with competing versions of the events leading up to the termination of the contract. According to one version, Super Products terminated the License Agreement because of breaches by Flexible and because Flexible went into receivership. According to the second version, Super Product's breach of the License Agreement caused Flexible to terminate the agreement and pursue this lawsuit, and forced Flexible into receivership. It is not up to this Court to decide which version of events best corresponds to reality.[3] That was the task of the arbitration panel. It concluded that Flexible's version of events was most likely true and entered an award accordingly. This judgment was obviously based on the terms of the License Agreement and the factual evidence presented to the panel. By no means can the arbitrators be said to have exceeded their powers, thus justifying the Court's vacation of the award.

---

**3.** Notwithstanding the fact that the legal theory upon which Super Products bases it motion was appropriately presented to—and decided by—the arbitration panel, the idea that an award of lost profits is somehow illegitimate if one party terminates the contract does not withstand scrutiny. Assuming that the arbitration panel concluded that Super Products was first to breach the License Agreement, it was reasonable for the panel

to conclude that Super Products' liability for that breach was not extinguished. It is a well-established principle that a "party who has breached a contract cannot take advantage of his breach; and he cannot set it up to relieve him from his contractual obligations." C.J.S., *Contracts* § 458 at 591. *See also Lumbermens Mutual Casualty Co. v. Royal Indemnity Co.,* 10 Wis.2d 380, 103 N.W.2d 69 (1960).

## IV. *SUMMARY*

Because we find that the arbitration award is based on the arbitration panel's interpretation of the License Agreement, the Court concludes that there is no basis upon which to order the award vacated. Therefore,

**IT IS HEREBY ORDERED** that Super Products' motion to vacate the arbitration award is denied.

**IT IS FURTHER ORDERED** that Flexible's motion to confirm the arbitration award, held in abeyance pending resolution of this matter, (Order of April 19, 1994), is granted and that judgment be entered in favor of the plaintiff.

**SO ORDERED.**