**M & L POWER SERVICES, INC., Plaintiff,**

v.

**AMERICAN NETWORKS INTERNA-TIONAL, Lucent Technologies, Inc. and St. Paul Fire & Marine Insurance Company, Defendants.**

No. C.A. 98–268L.

United States District Court, D. Rhode Island.

April 15, 1999.

Joseph J. Reale, Jr., Providence, RI, for plaintiff.

Peter L. Kennedy, R. Bart Totten, Adler Pollock & Sheehan, Providence, RI, for Defendant American Networks.

Joseph V. Cavanagh, Jr., Blish & Cavanagh, Providence, RI, for Defendants Lucent & St. Paul Fire.

## DECISION AND ORDER

LAGUEUX, Chief Judge.

American Networks International ("defendant") and M & L Power Services, Inc. ("plaintiff") did not want a judge to settle their differences. Defendant, a subcontractor for Lucent Technologies, hired plaintiff to assist as a sub-subcontractor, and one clause of their contract dictated that any dispute arising from the contract would be heard by an arbitrator.

The parties did have a dispute. An arbitrator heard the case. Arbitrator Paul G. Cove ("Cove") awarded plaintiff $135,858.88 on December 5, 1998, and the parties now ask this Court to intervene. Specifically, defendant asks this Court to vacate Cove's decision, and plaintiff requests that the award be confirmed and that judgment be entered thereon.[1]

---

1. Lucent Technologies and St. Paul Fire & Marine Insurance, the principal and surety on a payment bond respectively, are still defendants in this case. However, they were not

The parties do not agree whether this Court should look to federal or state law when it decides whether to vacate or confirm the arbitrator's decision. Neither side raised the issue in a meaningful way, even though there are reams of cases on both standards and on preemption by the Federal Arbitration Act, 9 U.S.C. §§ 1–16 ("FAA"). After analysis, it is clear that the two standards are almost identical and that the FAA preempts state law where the state provides less protection to arbitration awards.

It is equally as clear that, under either federal or Rhode Island law, this Court may vacate an arbitrator's award only in rare circumstances and this case does not qualify. Defendant offers a number of objections to Cove's decision, but after examination, this Court finds that all of defendant's claims are flawed. Defendant contracted to arbitrate, and it has suffered no harm that merits a judicial remedy. It was merely the losing party in a run-of-the-mill arbitration proceeding.

This Court will not substitute its judgment for the arbitrator's resolution of this matter. Therefore, defendant's motion to vacate the arbitration award is denied, and plaintiff's motion for confirmation of the award is granted.

## I. *Facts*

The parties signed a contract under which plaintiff was to perform as a sub-subcontractor on a construction project at the Rhode Island Department of Corrections, Howard Avenue in Cranston, Rhode Island. Plaintiff's employees helped install fiber optic and other cables as part of a larger project overseen by Lucent Technologies. The contract between the parties provided that any dispute between them should be decided through binding arbitration.

Plaintiff eventually demanded more money for its work than defendant was willing to pay. The dispute centered on claims for extra work, delays, materials, truck rentals and acceleration. Plaintiff sued in this Court, but plaintiff and defendant agreed to stay the proceedings pending arbitration. Arbitrator Cove heard four days of evidence in September and October 1998. Defendant paid for a transcript of the hearings. At the outset, plaintiff's counsel declined to join in shouldering a part of the cost although he did not object to making the transcript the official record of the proceedings. On the fourth day, plaintiff's counsel precipitated a new conflict by asking to see the transcript.

Through early November, the parties' counsel—who occupy offices separated by a single floor in Providence's BankBoston Plaza building—could not agree on a location for plaintiff's counsel to inspect the transcript. Cove tried to negotiate a solution, but plaintiff's counsel refused to drive to Boston to read the document, while defendant's counsel refused to allow inspection in Providence. On November 12, 1998, Cove dictated a Solomonic solution. He cut the baby in half—ruling that plaintiff could not see the transcript but that the transcript was not the official record of the hearing. (*See* Letter from Romeo to Parties of 11/13/98, at 1 (recording the decision) (attached as Exhibit 9 of Mem. of American Networks Int'l in Supp. of its Mot. To Vacate the Award of the Arbitrator (*herinafter* Defendant's Mem.)).[2] However, Cove allowed defendant's counsel to use the transcript at his discretion. (*See* id.)

The parties filed their post-hearing briefs, and on December 5, 1998, Cove found in favor of plaintiff for $135,858.88.

---

parties to the arbitration. Plaintiff withdrew its premature request to enforce the arbitration award against those two parties. Their liability will be addressed at a later time, if defendant does not pay the award.

**2.** Defendant apparently intended to attach the letter at Exhibit 10. However, in the papers submitted to the Court, Exhibit 10 is empty. The letter is behind an unrelated document at Exhibit 9.

Cove's single-page decision explained that the award was based on two of plaintiff's three claims against defendant. He awarded nothing on the third. However, he did not explain the reasoning behind his decision or the evidence that he found compelling.

## II. Review of an Arbitration Decision

The parties do not agree what law controls this Court's review of the arbitration decision. Defendant looks to the FAA, 9 U.S.C. § 10. Plaintiff looks to the Rhode Island Arbitration Act, R.I.Gen.Laws § 10-3-12 (the "RIAA"). Unfortunately, neither party makes a complete or well-documented argument in support of its position.

The application of the FAA to a state law proceeding is complex. It is controlled neither by the single district court case cited by defendant in oral argument nor by the primordial *Erie R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), trotted out by plaintiff. This Court must decide whether the FAA trumps state arbitration law. To accomplish that, this Court will outline the federal and state (here Rhode Island) standards. Then, it will decide what effect the FAA has on this case, namely in what circumstances the FAA preempts the state standard when this Court hears a case based on diversity jurisdiction.

## A. The Federal and State Standards

Defendant frames the argument that Cove's behavior prejudiced the rights of defendant and that Cove's decision was fundamentally irrational. The behavior attacked was Cove's choice to "decertify" the transcript. The irrationality is based on two grounds: that the decision was unfounded in fact and that it totally disregarded a contract provision that contained a condition precedent to making claims.

Therefore, this Court does not discuss the standards for reviewing an arbitration based on corruption, *see, e.g.,* 9 U.S.C. § 10(a)(1)–(2), based on lack of arbitrability, *see, Fleet Constr. Co. v. Town of North Smithfield,* 713 A.2d 1241, 1243 (R.I.1998), or based on public policy, *see, e.g., Exxon Corp. v. Esso Workers' Union, Inc.,* 118 F.3d 841 (1st Cir.1997) (federal); *Vose v. Brotherhood of Correctional Officers,* 587 A.2d 913 (R.I.1991) (state). *See also* William E. Smith, *Judicial Review of Labor Arbitration Awards · in Rhode Island,* 3 Roger Williams U.L.Rev. 165, 183–85, 192–94 (1998).

### 1. The FAA and "Advest"

The FAA establishes the relevant standard for a court to vacate an arbitration award:

> (a) In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration—
>
> (3) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.
>
> (4) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a)(3)–(4).

Additionally, the First Circuit has recognized a judge-created ground to vacate an arbitration verdict where an arbitrator exhibits a manifest disregard of the law. *See Advest, Inc. v. McCarthy,* 914 F.2d 6, 8–10 (1st Cir.1990). Judge Bruce M. Selya reduced the doctrine in non-labor cases to instances "where it is clear from the record that the arbitrator recognized the applicable law—and then ignored it." *Id.* at 9. In that case, Advest claimed that the law regarding damages was so clear and the arbitrators' award so irreconcilable

that the panel must have disregarded the law and "embarked on a flight of fancy." *Id.* at 9–10. Judge Selya noted that the Circuit Court gives greater deference to arbitrators than it does to district judges:

> [I]n order to prevail, Advest by its own admission must prove that the arbitrators' choice of redress was in manifest disregard of the law. The hurdle is a high one, especially since there is nothing talismanic about the phrase "manifest disregard." The configuration merely means that, to vacate an arbitration award, there must be some showing in the record, other than the result obtained, that the arbitrators knew the law and expressly disregarded it... As arbitrators need not explain their award, and did not do so here, it is no wonder that appellant is hard pressed to satisfy the exacting criteria for invocation of the doctrine.

*Id.* at 10 (citations omitted). *See also Prudential–Bache Securities, Inc. v. Tanner,* 72 F.3d 234, 237–38 (1st Cir.1995).

### 2. The RIAA and "Prudential Property"

The parallel Rhode Island standard of review appears in the RIAA, which states that a court may vacate an award:

> (3) Where the arbitrators were guilty of misconduct in refusing to postpone hearing, upon sufficient cause shown, or in hearing legally immaterial evidence, or refusing to hear evidence pertinent and material to the controversy, or other misbehavior by which the rights of any party have been substantially prejudiced
> (4) Where the arbitrators exceeded their powers, or imperfectly executed them that a material, final and definite award upon the subject matter submitted was not made.

R.I.Gen.Laws. § 10–3–12(3)–(4).

Beyond the statute, the Rhode Island Supreme Court has held that an award can be vacated only when the arbitrator manifestly disregarded the law or the arbitration award was completely irrational. *See*

*Fleet Constr.,* 713 A.2d at 1243; *Prudential Property and Cas. Ins. Co. v. Flynn,* 687 A.2d 440, 442 (R.I.1996). The "manifest disregard" standard similar to the federal one entered the state's jurisprudence in the 1980s as a result of a United States Supreme Court decision interpreting the FAA. *See Wayne Distr. Co. v. Piti Building Co. Inc.,* 512 A.2d 870, 871 (R.I.1986) (citing *Wilko v. Swan,* 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953)). *See also Paola v. Commercial Union Assurance Cos.,* 461 A.2d 935, 936 (R.I.1983) (prior standard limiting the power to irrational results). Irrationality can only exist where a trial court finds a completely irrational result. *See Department of Mental Health,* 692 A.2d at 322; *Prudential Property,* 687 A.2d at 441 (such "irrationality that the integrity of the process is compromised").

■ The judiciary has a limited role in the arbitration process. *See Department of Mental Health, Retardation and Hospitals v. Rhode Island Council 94 A.F.S.C.M.E.,* 692 A.2d 318, 322 (R.I.1997); *Prudential Property,* 687 A.2d at 441. As long as an arbitration award "draws its essence" from the contract and is based upon a "passably plausible" interpretation of the contract, it is within the arbitrator's authority and the court's review must end. *See Prudential Property,* 687 A.2d at 441; *Jacinto v. Egan,* 120 R.I. 907, 391 A.2d 1173, 1176 (1978).

■ A mistake of law appearing on the face of the award is not grounds for vacating an arbitration award for other misbehavior. *See Loretta Realty Corp. v. Massachusetts Bonding & Ins. Co.,* 83 R.I. 221, 114 A.2d 846, 849 (1955). Nor is a mistake of law grounds for finding a manifest disregard of the law. *See Westminster Constr. Corp. v. PPG Indus., Inc.,* 119 R.I. 205, 376 A.2d 708, 711 (1977).

### 3. The difference between the standards

The federal and Rhode Island standards are analogous, except that a court may vacate an award for "complete irrationali-

ty" under Rhode Island law. The statutes are almost identical, and both systems command a policy in favor of upholding arbitration decisions. The parties did not raise specific differences that they saw between the standards, and only in the past year has the Rhode Island Supreme Court explained "complete irrationality."

On defendant's claim that Cove's refusal to rely upon the record rose to "misconduct" or otherwise substantially prejudiced its rights, the federal and state standards are indistinguishable. They are both drawn from the statutes, and in the relevant sections, the statutes use the same words except that Rhode Island requires that a party was "substantially prejudiced" rather than "prejudiced." *See* 9 U.S.C. § 10(3); R.I.Gen.Laws. § 10–3–12(3). This Court can find no cases that expand on the definition of "prejudice" or "substantial prejudice," so it assumes that the Rhode Island law requires the same prejudice as the federal rule does.

On defendant's claim that Cove's decision was irrational or a "manifest disregard" of the law, the Rhode Island law offers "complete irrationality" as a ground additional to the federal standard. The meaning of "complete irrationality" has been discussed only briefly by the Rhode Island Supreme Court. In two 1998 cases, the Court found irrationality when it examined the evidence before labor arbitrators and found that the evidence contradicted the arbitrators' award. *See Rhode Island Council 94 v. State*, 714 A.2d 584, 591–95 (R.I.1998); *Town of Smithfield v. Local 2050*, 707 A.2d 260, 263–64 (R.I. 1998). This new precedent appears to encourage trial courts to examine the arbitrator's evidence, not merely the conclusion. *See Smith, supra*, at 199. That puts the court in the position of weighing the evidence on its own even in the absence of a "manifest disregard" of the law, which is clearly not allowed under *Advest* and the FAA. In neither *Rhode Island Council 94* nor *Town of Smithfield* was there a finding, based on more than the award, that

the arbitrators understood the law and rejected it. Therefore, the "complete irrationality" standard as recently articulated by the Rhode Island Supreme Court does provide an avenue to overturn an arbitration award unavailable under the FAA.

**B.** *The FAA Preemption of State Law*

■ The FAA does not create federal question jurisdiction. *See Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 n. 32, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983); *PCS 2000 LP v. Romulus Telecomm., Inc.*, 148 F.3d 32, 34 (1st Cir.1998). This case is before this Court by virtue of diversity jurisdiction.

■ Generally, a federal court sitting in diversity applies the state substantive law and federal procedural rules. *See Servicios Comerciales Andinos, S.A. v. General Electric Del Caribe, Inc.*, 145 F.3d 463, 478 (1st Cir.1998). Arbitration rules are substantive law. *See Moses H. Cone*, 460 U.S. at 25 n. 32, 103 S.Ct. 927. However, the United States Supreme Court has ruled since 1967 that the FAA applies in diversity cases because Congress intended the Act to prescribe how federal courts are to conduct themselves. *See Allied–Bruce Terminix Cas. v. Dobson*, 513 U.S. 265, 271, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 405, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967).

The FAA even applies in state court litigation where a state judge considers a state cause of action. *See Allied–Bruce*, 513 U.S. at 271–72, 115 S.Ct. 834; *Southland Corp. v. Keating*, 465 U.S. 1, 15–16, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984); *PCS 2000 LP*, 148 F.3d at 35 n. 1 (state "courts must adhere to and enforce the FAA, as that statute applies unreservedly in state as well as federal courts").

■ Where the FAA applies, it affects state law cases by preempting state laws that conflict with it. *See, e.g., Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 688, 116 S.Ct. 1652, 134 L.Ed.2d 902

(1996) (preempting a Montana statute). The Act applies to any transaction involved in interstate commerce. *See* 9 U.S.C. § 2.

■ This case undoubtedly involves interstate commerce. Plaintiff trumpets that the "project was performed solely in Rhode Island and nowhere else," (Mem. of M & L Power Services, Inc. in support of its Objection to the Mot. To Vacate Arbitration Award by American Networks Int'l at 2), as if that controlled the analysis. This was a contract between a Rhode Island corporation and a Connecticut corporation that involved work for a third corporation, Lucent Technologies which is a multi-state organization. The parties traveled between states and sent documents and money across state borders. Certainly, the products that plaintiff installed were created out of state or it otherwise relied on out-of-state materials. That means this transaction was involved in interstate commerce. *See Allied–Bruce*, 513 U.S. at 282, 115 S.Ct. 834 (termite-control contract involved interstate commerce where it affected out-of-state corporation and required out-of-state materials to kill the insects). *See also, e.g., Howard Fields & Assoc. v. Grand Wailea Co.*, 848 F.Supp. 890, 893–94 (D.Haw.1993) (parties traveled between Hawaii and California and are presumed to have used the mails); *Axtell v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 744 F.Supp. 194, 195 (E.D.Ark.1989) (Arkansas plaintiff maintained an account in Arkansas with New–York based firm); *Pioneer Properties, Inc. v. Martin*, 557 F.Supp. 1354, 1363–64 (D.Kan.1983) (Kansas company invested in Canada).

The issue is whether the FAA preempts all state laws in every case in which it applies. Defendant supported its "complete preemption" argument with a single district court precedent, *Aviall, Inc. v. Ryder Sys., Inc.*, 913 F.Supp. 826, 830 (S.D.N.Y.1996), *aff'd* 110 F.3d 892 (2d Cir. 1997). Yet, circuit courts have used similarly sweeping language in other recent cases. *See, e.g., National Union Fire Ins. Co. of Pittsburgh, Pa. v. Belco Petroleum Corp.*, 88 F.3d 129, 132 (2d Cir.1996) (FAA governs an insurance dispute); *Tracer Research Corp. v. National Envtl. Servs. Co.*, 42 F.3d 1292, 1294 (9th Cir.1994) (parties acknowledge FAA governs despite contract clause that chose Arizona law); *Atlantic Aviation, Inc. v. EBM Group, Inc.*, 11 F.3d 1276, 1280 (5th Cir.1994) (FAA governs any case where it applies regardless of state law). *See also* 13B Charles Alan Wright & Arthur Miller, *Federal Practice & Procedure* § 3569 (2d ed.1987).

That interpretation is erroneously broad. Congress did not intend to preempt all state arbitration law principles. *See Volt Info. Sciences, Inc. v. Board of Trustees*, 489 U.S. 468, 477, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989). Congress did not intend to occupy the entire field of arbitration. *See id.* (citing *Bernhardt v. Polygraphic Co.*, 350 U.S. 198, 76 S.Ct. 273, 100 L.Ed. 199 (1956). The Supreme Court has incessantly explained that the FAA preempts state law because Congress intended to overcome the historic refusal of some courts to enforce arbitration agreements. *See Allied–Bruce*, 513 U.S. at 270, 115 S.Ct. 834; *Volt*, 489 U.S. at 474, 109 S.Ct. 1248. The FAA preempts state law because Congress wanted to protect arbitration awards from state interference. *See Allied–Bruce*, 513 U.S. at 270, 115 S.Ct. 834. *See also Volt*, 489 U.S. at 474, 109 S.Ct. 1248; *Perry v. Thomas*, 482 U.S. 483, 489–90, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987); *Southland*, 465 U.S. at 15–16, 104 S.Ct. 852.

■ State laws are only preempted to the extent that they conflict with Congressional intent. *See Volt*, 489 U.S. at 477, 109 S.Ct. 1248. Examining the FAA, the Supreme Court has held that state law is:

pre-empted to the extent that it actually conflicts with federal law—that is, to the extent that it stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.

*Id.* (citation omitted). There is no federal policy favoring arbitration under a certain set of procedural rules. *See id.* at 478, 109 S.Ct. 1248. Federal policy is simply to ensure the enforceability, according to their terms, of private agreements to arbitrate. *See id.*

▉ This suggests that where state law does not limit a party's ability to enforce an arbitration award, it is not preempted by the FAA. This holding is supported by First Circuit precedent. The First Circuit has, without comment, applied the FAA in cases involving diversity jurisdiction. *See MCI Telecomm. Corp. v. Matrix Communications Corp.,* 135 F.3d 27, 31 (1st Cir.1998) (breach of contract); *Tanner,* 72 F.3d at 236 (wrongful discharge). However, it held in 1988 that the FAA did not preempt a Massachusetts statute that allowed a trial court—in that case a federal district court sitting in diversity—to consolidate arbitration actions. *See New England Energy Inc. v. Keystone Shipping Co.,* 855 F.2d 1, 6–7 (1st Cir. 1988). The *New England Energy* Court explained that:

> [W]hen federal law applies to an arbitration agreement, the Federal Arbitration Act has never been construed to preempt all state law on arbitration. We do not read the recent series of Supreme Court arbitration cases to establish such a proposition by implication. Those cases concerned only laws that would override the parties' choice to arbitrate rather than litigate in court, in direct conflict with the Act's primary purpose of ensuring the enforcement of privately negotiated arbitration agreements. At best, the Supreme Court's decisions support a conclusion that all state laws seeking to limit the use of the arbitral process are superceded by federal law.

*New England Energy,* 855 F.2d at 4. The first sentence quoted above is crucial because the First Circuit was explicit that the FAA can "apply" to a dispute without preempting all state arbitration law. Once

a court finds the FAA applies to a case being heard by virtue of diversity jurisdiction, it must look for conflict with the FAA's intent in order to find preemption. *See also Securities Indus. Assoc. v. Connolly,* 703 F.Supp. 146 (D.Mass.1988) (applying *New England Energy* ); *Flexible Mfg. Sys. Pty Ltd. v. Super Products Corp.,* 874 F.Supp. 247, 248–49 (E.D.Wis. 1994) (applying Wisconsin law where it did not conflict with federal purposes), *aff'd* 86 F.3d 96 (7th Cir.1996). No subsequent Supreme Court jurisprudence overturns that reasoning, and the *Volt* decision quoted above confirms it.

The circuit courts that wrote the conflicting, broad preemption language cited above resolved the issue so summarily that this Court assumes the issue raised in this case was not litigated before them. *See National Union,* 88 F.3d at 132; *Tracer Research,* 42 F.3d at 1294; *Atlantic Aviation,* 11 F.3d at 1280. At the same time, the Supreme Court cases that actually weighed the issue and found preemption involved specific state laws that obviously restricted a party's ability to enforce arbitration awards. *See, e.g., Doctor's Associates,* 517 U.S. at 682–83, 116 S.Ct. 1652 (Montana statute requiring notice of arbitration clause on front page of contract); *Allied–Bruce,* 513 U.S. at 268–69, 115 S.Ct. 834 (Alabama statute voiding predispute arbitration agreements); *Perry,* 482 U.S. at 486, 107 S.Ct. 2520 (California statute requiring judicial forum for wage disputes); *Southland,* 465 U.S. at 10, 104 S.Ct. 852 (California statute requiring judicial forum for franchise disputes).

▉ This Court adopts the reasoning of *Volt* and *New England Energy* and holds that the FAA only preempts state law to the extent that said state law provides lesser protection for arbitration agreements and awards than does federal law. Where state law provides greater or equal protection for arbitration decisions when compared to the FAA, the state law does not conflict with Congress's policy in favor of arbitration.

In this case, the "complete irrationality" ground for vacating an arbitration award violates Congress' policy as set forth in the FAA. As such, it is preempted and may not be applied to any case to which the FAA applies—whether in federal or state court. The FAA does not apply to the arbitration of employment contracts that do not involve interstate commerce, so this decision does not affect the specific holdings of *Town of Smithfield* or *Rhode Island Council 94*. However, the "complete irrationality" doctrine cannot be imported into commercial arbitrations to which the FAA applies.

### III. *Applying the Law to this Case*

Defendant's allegations are so weak that they clearly fail under either the state or federal standards, and this Court cites to both sets of case law to emphasize that weakness. *See Flexible Mfg.*, 874 F.Supp. at 249 (applying state law with federal law as persuasive authority). Stripped to the core, defendant alleges three flaws in Cove's conduct as an arbitrator in this case:

- that Cove prejudiced defendant's rights by ruling that the transcript was not the official record of the proceeding.
- that the decision is irrational because it is unfounded in fact.
- that the decision is irrational because Cove manifestly disregarded contract law and the clause that required a claim as a prerequisite for plaintiff to get paid.

This Court will address each in turn. The first claim is based on statutory law, and the second and third rely on the judge-made "manifest disregard" of law standard.

### A. *Cove's Decision to "Decertify" the Transcript*

Defendant's claim that Cove prejudiced the process by not using the transcript appears to have two prongs—the general lack of a transcript (defendant could not refer to specific lines in its brief or Cove could not examine the record) and the specific decision to "decertify" the transcript after the hearings (Cove would have taken more-detailed notes or defendant would have tried the case differently). (*See* Defendant's Mem. at 6.)

The first prong is facetious because defendant had no right to a transcript. Under both federal and state law, an arbitrator has the discretion to set the arbitration procedures. *See Hoteles Condado Beach, La Concha and Convention Center v. Union De Tronquistas Local 901*, 763 F.2d 34, 38–39 (1st Cir.1985) (arbitrator has wide latitude, including discretion to sequester witnesses); *Local Union No. 251 v. Narragansett Improvement Co.*, 503 F.2d 309, 312 (1st. Cir.1974) (arbitrator has discretion not to postpone hearing); *Burns v. Segerson*, 122 R.I. 123, 404 A.2d 500, 503–04 (1979) (arbitrator has discretion to set procedure absent irrationality); *Belanger v. Matteson*, 115 R.I. 332, 346 A.2d 124, 138 (1975) (same); *Coldwell Banker New England v. Bruno Realtors, Inc.*, 1991 WL 789758 at *2 (Sup.Ct. February 27, 1991) ("there must exist evidence of a clearly irrational nature to support a procedural abuse"). There is no requirement that a transcript be made of the hearings, and many arbitrations occur without having one at all. Defendant complains that the "arbitrator had no record to verify" the arguments that defendant made in its post-hearing brief. (Defendant's Mem. at 6.) The arbitrator had his memory, the tool employed by centuries of juries and judges before him. To overturn the award merely because Cove did not use the transcript would be a complete disregard for the discretion given to arbitrators.

The second prong is equally flimsy because defendant has not proven that the decision to "decertify" the record had any prejudicial effect on defendant. The arbitrator's notes are the arbitrator's business. If Cove felt he had enough recollection to decide the case, then this Court will not interfere based on defendant's mere

observation that Cove "may [have taken] less detailed notes." (Id.) As to its effect on defendant, the argument that defendant's counsel would have tried the case differently if he knew Cove would not have a transcript fails as well. First, defendant had no guarantee that Cove would ever read a 600–page record. Even if the transcript had been official, the arbitrator had the power to rule after reading the briefs and utilizing his memory. Therefore, if defendant tactically decided to downplay the crux of its case, then it did so at its own risk. Second, Cove's decision provides no evidence of a bias by Cove against defendant. He was faced with an intractable dispute and made a reasonable decision under the circumstances. In fact, he allowed defendant to use the transcript as it wished. Short of some misconduct or prejudice, this Court will not intervene.

Therefore, this Court finds no misconduct by Cove concerning the transcript. In addition, there was no prejudice—substantial or otherwise—inuring to defendant resulting from Cove's decision to have no official record.

### B. *Decision Not Based On The Law*

Defendant makes two arguments to support its contentions that Cove manifestly ignored the law. First, defendant contends that Cove found that plaintiff performed extra work and suffered delays and thus incurred damages, even though no evidence on those issues was presented to him. It argues that there was no documentary evidence of extra work or delays and no documentary evidence of damages. Second, defendant argues that Cove ignored contract law and a contract clause that required plaintiff to make a claim as a prerequisite to receiving payments. It argues that there was no evidence that plaintiff made any claims.

### 1. *The transcript is not an official record*

Cove ruled that defendant's transcript was not the official record of the hearing. Under both federal and state law, this Court must defer to the arbitrator's procedural decisions absent some extraordinary finding. *See Hoteles Condado Beach,* 763 F.2d at 38–39; *Local Union No. 251,* 503 F.2d at 312; *Burns,* 404 A.2d at 503–04; *Belanger,* 346 A.2d at 138; *Coldwell Banker New England,* 1991 WL 789758 at *2. Deciding whether an arbitration hearing will have an official record is deep within the discretion of the arbitrator, and it is not irrational to have no official record. Many arbitrations have no transcripts. *See, e.g., Berthod Realtors, Inc. v. J.W. Riker–Northern Rhode Island, Inc.,* 636 A.2d 1328, 1329 (R.I.1994).

■ As a matter of law, this Court finds that the transcript is not the official record of the arbitration. Cove choose to exclude it from the record of his arbitration so it is not part of the record for this Court to review. It is worth noting that plaintiff would not have had the transcript to pursue its appeal if Cove had ruled the opposite way, i.e., for defendant. Defendant never let plaintiff even see the document; it cannot enjoy unilateral possession of an official record.

Without the transcript, defendant lacks a record that would prove that Cove manifestly disregarded the law. *See Tanner,* 72 F.3d at 240 (noting difficulty of making showing on a limited record); *Advest,* 914 F.2d at 10 (same); *Berthod Realtors,* 636 A.2d at 1328–29 (same).

■ Defendant must make some showing—other than the result obtained— that Cove knew the law and expressly disregarded it. *See Tanner,* 72 F.3d at 239 and n. 6; *Advest,* 914 F.2d at 10; *Wayne Distrib.,* 512 A.2d at 871–72. Arbitrators do not need to explain the reasoning behind their awards. *See MCI Telecomm.,* 135 F.3d at 36; *Westminster Constr.,* 376 A.2d at 710.

At most, defendant can only use Cove's single-page decision as evidence that he made a mistake in interpreting the law when he decided in plaintiff's favor and

when he calculated the damages. That is blatantly insufficient.

Therefore, this Court finds no manifest disregard for the law or misconduct that prejudiced defendant in Cove's decision.

2. *But even the transcript is insufficient*

Despite this Court's legal ruling, it did read the entire transcript, and it finds nothing there to support defendant's claims. In fact, plaintiff provided evidence of the extra work it performed, delays that it encountered, and the resulting damages it sustained. Plaintiff's witnesses described oral contract amendments, and Cove admitted various exhibits that claimed to be records of delays and calculations of damages. Defendant obviously dismisses that evidence. Cove apparently did not.

It is worth reemphasizing that the "manifest disregard" standard requires evidence that Cove appreciated the correct legal standard and then declined to apply it. In 1993, Senior District Judge Shane Devine refused to vacate an arbitration award despite a transcript in which arbitrators asked attorneys whether they were bound by the law. *See Trustees of Lawrence Academy at Groton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 821 F.Supp. 59, 62–63 (D.N.H.1993). Merrill Lynch argued that the colloquy was proof that the arbitrators appreciated the power of the statute of limitations and then decided to ignore it. *See id.* at 62. However, Judge Devine found that although the transcript showed Merrill Lynch's attorney explaining the statute of limitations, it did not include comments by the arbitrators that they accepted that explanation. *See id.* at 63.

Defendant has even-weaker evidence in this transcript. Defendant's pleadings do not highlight any colloquy in which Cove shows his manifest disregard for the law, and on inspection, Cove's participation was limited to handling evidentiary objections and scheduling matters. Cove and the attorneys never discussed the law, so there is no evidence about what Cove understood the law to be.

In summary, the transcript's more than 600 pages of testimony show that the parties presented Cove with radically different descriptions of the project. They disagreed about how the written contract was negotiated, what it covered and who bore the risk of overruns. Plaintiff's witnesses testified that defendant agreed to numerous modifications, including approval for extra work, materials and truck rentals that were not covered in the written contract. Defendant's witnesses testified that they approved none of the additions claimed by plaintiff. Defendant's counsel impeached plaintiff's witnesses on cross-examination on some points, and he even brought back plaintiff's principal witness for a second round of testimony. Thus, the hearings were all about the facts of the case, not about the law.

The long and short of it is that where an arbitrator hears conflicting arguments or evidence and does not explain the reasons for his decision, this Court cannot vacate the award based on manifest disregard for the law. *See Tanner,* 72 F.3d at 240. Arbitrators have as wide a latitude in crafting remedies as they possess in deciding cases. *See id.; Advest,* 914 F.2d at 10–11. Cove was not even limited to the damages calculation offered by the parties. *See Tanner,* 72 F.3d at 240; *Advest,* 914 F.2d at 10–11. Even if Cove speculated on damages, this Court would have to uphold the decision absent evidence that he knew the law and expressly disregarded it.

The transcript suggests Cove preferred plaintiff's witnesses to defendant's. This Court will not second-guess him. Defendant's strongest argument is that Cove made a mistake of law. As explained above, that is insufficient to vacate an arbitration award.

## CONCLUSION

Cove's arbitration award draws its essence from the contract and is based on a passably plausible interpretation of the

contract. Cove did not manifestly disregard the law, and he committed no misconduct that prejudiced a party.

Defendant did not want a judge to oversee its pact with plaintiff, and it contracted for arbitration—with its simplicity and speed. It is true that the arbitrator offered none of the explanations that this Court must provide when it decides a case, but this Court's scrutiny of arbitration decisions is far more limited than the First Circuit's review of trial court decisions. Defendant preferred a streamlined system of civil justice, and it has received the benefits of its bargain. Under both federal and state law, this Court cannot interfere with the arbitrator's resolution of this dispute.

For the preceding reasons, defendant's motion to vacate the arbitration award is denied, and plaintiff's motion for confirmation of award is granted.

Ultimately a judgment will enter for M & L Power Services against American Networks International in the amount of $135,858.88 plus 12% per annum interest calculated from December 5, 1998 (the date of the award) until the date judgment is entered. Since the First Circuit abhors piecemeal appeals, no judgment shall enter until the claims against the other two defendants are resolved.

It is so Ordered.